# JUNE TERM, 1844.

### No. 1.

#### RAYMOND DARLY v. CHAS. CHEVALLIER.

(See Note 62.)

*Appeal from San Augustine.*

BAYLOR, JUSTICE.—Two points present themselves for our consideration in this case, which are alleged as grounds of error for a reversal of the judgment below.

1. That the note sued was payable on the contingency of the return of the payee from San Antonio, and that it was not proven on the trial that he had ever returned.

2. That it is not alleged and proven that the claim had ever been presented to the appellant, as administrator of the payor.

In regard to the first point it will be sufficient to say that the note bears a credit of $100, which, added to length of time which had elapsed between the making of the note and the commencement of the suit, was sufficient to raise the presumption that the contingency had happened.

The second point is of more consequence. This court has decided, that under out statute it is necessary to allege and prove that the claim had been presented to the administrator and refused by him, and that this court would reverse judgments in the courts below, where such allegation and proof was wanting. See Cummings, Administrator, v. Jones. This case at bar was commenced before the passage of our statute, and although its provisions are similar to those of Louisiana, yet we feel bound to conform to the Louisiana decisions in cases arising before our statute. In Louisiana it is necessary to present claims to an administrator before suing on them; but unless advantage is taken in the court below of such nonpresentation, the appellate tribunal will not notice the defect. In the case at bar no objection was taken in the court below to the want of an allegation of the presentation and refusal of the claim, and this court will not now set aside the judgment for that reason. This decision is not to be understood as overruling the case of Cummings v. Jones, and the decision in that case will be adhered to.

Let the judgment of the court below be affirmed with costs.

*Affirmed.*

chaumes, 22 T., 116; Hall v. Claiborne, 27 T., 217; House v. Bennett, 40 T., 346; Wilson v. Adams, 50 T., 5, 13; Warren v. Wooters, 52 T., 568; Mills v. Paul, 1 T. C. A., 419. Where right of appeal is lost by lapse of time it can not be revived by statute subsequently passed. Lockhart v. Lockhart, 1 T., 199, 201; First Nat. Bank v. Preston Nat. Bank, 85 T., 560; First Nat. Bank v. Preston Nat. Bank, 3 T. C. A., 545.

[2] Retrospective laws prohibited by Constitution are such as give rights or impair vested rights, by relation back. Sutherland v. De Leon, 1 T., 250; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 348; Hamilton v.

## No. II.

Briscoe further alleged that the said Eliza had not complied with any of the trusts mentioned in said instrument of writing, except the payment of the first and second month's hire; that she had entirely failed to comply with any or either of the other trusts in said writing named, and that she had thereby forfeited and forever lost the privilege of either keeping said slave, or of repurchasing him at the price agreed on between the parties. The petition further alleges that the said Eliza, confederating with others, had the said slave in possession; and that the other defendant, Portis, in some way or other had connected himself with the transaction so as to have the actual control of said slave. The petition concluded with the usual prayer, that defendants be compelled to deliver up said slave to the said Briscoe, and that the defendants' title to the same be vested in him, and that the hire be paid, etc.

Flinn, 21 T., 713; Sherwood v. Fleming, 25 T. Supp., 408; Bender v. Crawford, 33 T., 745; Moore v. Letchford, 35 T., 185; Chalk v. Darden, 47 T., 438; White v. Martin, 66 T., 340; Mellinger v. Houston, 68 T., 37; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Calder v. Bull, 3 Dal., 386; Cummings v. Missouri, 4 Wall., 277; Campbell v. Holt, 115 U. S., 630. Providing a remedy for existing rights, or changing remedy, is not a retrospective law prohibited. Hall v. Allcorn, Dal., 433; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 343; Treasurer v. Wygall, 46 T., 447; Worsham v. Stevens, 66 T., 89; Parker v. Buckner, 67 T., 20; Odom v. Garner, 86 T., 374; Association v. New-

To this petition at the spring term of the district court in the year 1840, the defendants filed the following plea:

"In this case, David Y. Portis, Henry Corri and Eliza Corri by attorney, come and defend the wrong and injury, etc., and for answer say, that the negro boy mentioned in plaintiff's petition was delivered up to him, D. Y. Portis, in part satisfaction of a certain mortgage, which he had and held as attorney, for F. Soissons, of the city of New Orleans, against the said Eliza Corri; and that at the time of the delivery, the said negro was in possession of said Corri; and for further answer denies all and singular the allegations in plaintiff's petition and pleads payment of the debt. D. Y. Portis, for himself; Megginson & Thruston, for H. Corri and E. Corri."

On the trial of the cause in the court below, there was a verdict and judgment in favor of the defendants for the sum of $223.50, and that the title of the slave sued for was in the defendants. From which judgment Briscoe appealed, and seeks to reverse it here on two grounds:

1. The court below erred in considering the bill of sale a mortgage, instead of a conditional sale, with the privilege of repurchase on the part of Eliza Corri.

2. Under the pleadings in this case, it was error to render a judgment against the appellant, if the facts would otherwise justify it; as there was no plea of reconvention or offset.

In considering the first assignment of errors, we find upon looking into the record that the court below considered the bill of sale for the slave a mortgage, and permitted the defendants to show by verbal proof the consideration which Briscoe paid for the slave, and to show also by proof how the mutual account stood between the parties. Without deciding whether the bill of sale in this instance is a mortgage or conditional sale with the privilege to repurchase, we think that the written contract bears strong marks upon its face of hardship and oppression. This circumstance, together with the fact that the slave remained in the possession of the vendor, might perhaps, upon a proper state of the pleadings, have authorized the judge below to have concluded that the bill of sale was a mortgage and not a conditional sale. But it is unnecessary to decide this point, as we consider the second assignment of errors fatal to the cause.

In the second assignment of errors we think the objection is well taken. Under the plea of the defendants the jury were not authorized to find a balance in favor of them, there being no plea of set-off claiming such indebtedness on the part of Briscoe to the defendants. As the

man, 86 T., 380; Fristoe v. Blum, 92 T., 76; Standifer v. Wilson, 93 T., 232; Capps v. Carvey (T. C. A.), U. R. C., 1897; Maynard v. Freeman (T. C. A.), U. R. C., 1900. Statutes are never construed to operate retrospectively unless their plain language requires it. Taylor v. Duncan, Dal., 514; Linn v. Scott, 3 T., 67; Martin v. State, 24 T., 61; Orr v. Rhine, 45 T., 345; Insurance Co. v. Ray, 50 T., 511; Grigsby v. Peak, 57 T., 142; Johnson v. Taylor, 60 T., 360; Mellinger v. Houston, 68 T., 37; Rockwall Co. v. Kaufman Co., 69 T., 172; McGregor v. Goldammer, 2 U. C., 49; Murray v. Gibson, 15 How., 421; Harvey v. Tyler, 2 Wall., 329; Chewheong v. United States, 112 U. S., 536; Shreveport v. Cole, 129 U. S., 36.

plaintiff below could not recover more than the sum claimed by him to be due in his petition, neither could the defendants have a judgment in their favor for a greater sum than they claimed by their plea. This rule is essential to every cause to prevent surprise; and in order that the parties litigant may know what the matters really are in dispute between them. The judgment therefore of the court below must be reversed, the cause remanded, and a new trial awarded, with leave for the parties to amend their pleadings, in order that the case may be disposed of upon its true merits. .

*Reversed and remanded.*

## No. III.

### WILLIAM B. HAWKINS v. ELIJAH STEVENSON.

*Appeal from Bowie County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted in the District Court of Bowie County by the appellee against the appellant, on a promissory note with a seal attached, payable to the appellee and not negotiable on its face. The appellant, defendant in the court below, plead the general issue, and a verdict and judgment were rendered against him. At the trial term of the cause, the note had been lost and parol testimony was admitted to prove its loss and its original existence. A motion was made to set aside the verdict and grant a new trial on a number of grounds, only one which it is necessary to consider at present, the others being frivolous, except the fourth, which is as follows: "That oral testimony can not be received, as was the fact in this case, to prove the existence of a bond or note under seal, when it is possible that the said bond or note may hereafter be produced."

It has also been assigned, as additional grounds, upon which the judgment of the district court ought to be reversed:

1. That the original existence of the instrument declared upon was not established by the testimony as it is sent up to this court in the statement of facts.

2. That the name of the party plaintiff in the court below was not stated in the petition, as required by the statute.

Let us examine these three grounds in the order in which they are stated. 1. There is no principle of law better settled than that oral testimony is admissible to prove the loss of bonds or notes, and when the fact of loss is satisfactorily established, to prove by the same description of evidence the original existence and contents of the instrument. The

---

**Note 50.**—Denison v. Ingram, p. 519.

A decree probating a will is not subject to collateral attack and is conclusive as to all persons, until set aside. Paschal v. Acklin, 27 T., 173; Lewis v. Ames, 44 T., 319; March v. Huyter, 50 T., 243; Whitman v. Haywood. 77 T., 557; Box v. Lawrence, 14 T., 545. A will which has been probated in another State is not open to contest. Poole v. Jackson, 66 T., 380.

legal demand of the payee or bona fide holder is not extinguished by the destruction or loss of the written evidence of his claim; but upon proper proof of its original existence and loss, or destruction, he will be entitled to a recovery. There is some distinction drawn in the authorities, by which the rule is made more rigorous, in relation to negotiable instruments merely lost and not destroyed before falling due, where the maker or acceptor might run the hazard of being compelled to pay the debt again in case the lost instrument should be discovered in the hands of a bona fide holder for a valuable consideration. In such cases it may be necessary to go into a court of equity to obtain a recovery by a tender of proper indemnity. But the general principle is well settled. McNair v. Gilbert, 3 Wend., 344; Wamsly v. Child, 1 Vesey, 341; Long v. Baillie, 2 Camp., 214, note; Jones v. Fales, 5 Mass., 101; Renner v. Bank of Colombia, 9 Wheat., 581. In the latter case the admissibility of parol testimony was resisted, unless the *destruction* of the note had been previously made apparent; but the Supreme Court of the United States overruled the objection, saying that the rule with regard to the admission of secondary evidence is not so restricted—"if the original is *lost* by accident and no fault is imputable to the party, it is sufficient—that every case of this kind must depend in a great measure upon its own circumstances—and the rules of evidence be so applied as to promote the ends of justice and guard against fraud and imposition."

No difficulty can arise in relation to the case now under consideration. The instrument on which the suit was brought has never been transferred out of the hands of the plaintiff, who was the original payee; and being payable to him alone and not to order or to bearer, no suit could hereafter be maintained against the maker except in the name of the payee or his legal representatives. The defendant therefore runs no risk of ever being compelled to pay it over again, as the judgment in this case could always be pleaded, in bar of any other action, into whomsoever's hands the lost note might fall, or under whatever circumstances.

As to the second ground: It is not denied that the loss of the instrument sued on was fully established; but it is insisted that its original existence was not established by the testimony as sent up to this court in the statement of facts. The loss of the note occurred after the petition was filed and before the trial of the cause; it was particularly described in the petition; it was not in the hands of the plaintiff at the time of its loss, but in those of the attorney who drew the petition; who in his testimony says that the paper lost was the one described in the petition,

---

Note 51.—Trott v. Patton, p. 522.

Interest is a creature of local law and governed by the law of the place where the contract is made. Huff v. Folger, Dal., 530; Burton v. Anderson, 1 T., 93; Andrews v. Hoxie, 5 T., 171; Davis v. Thorn, 6 T., 482; Willard v. Conduit, 10 T., 213; Bailey v. Heald, 17 T., 102 (holding that as to an indorser the place of indorsement governs); Whitlock v. Castro, 22 T., 108. Prior to Acts of January 18 and 20, 1840 (Gammel's Laws of Texas, vol. 2, pp. 177 and 182), legal rate of interest was 5 per cent. Huff v. Folger, Dal., 530; Chevallier v. Buford, 1 T., 503; Davis v. Thorn, 6 T., 482. See Rev. Stats. 1895, arts. 3097-3107.

and that it was correctly described. Proof of the loss of an instrument, accurately described in the pleadings in court, was sufficient evidence of its original existence to justify the finding of the jury. The existence and loss were both facts proper to be ascertained by the finding of a jury, and we do not feel warranted in reversing the judgment for want of evidence to support the verdict. In addition to this, the defendant in the court below had pleaded nil debet before he was aware of the loss of the note sued on, and the jury were justified in drawing from that circumstance a strong inference of the original existence of the note, for it is reasonable to suppose, that if it did not exist as a genuine instrument at the commencement of the suit, the defendant would have filed the plea of non est factum and thereby put the plaintiff to the proof of its execution.

As to the third point, that the name of the plaintiff was not stated in the petition in the manner required by the statute: This objection comes too late in this court, after the defendant having answered to the merits of the case, a verdict and judgment has been rendered against him. It should have been taken advantage of in abatement, and at the time when the defect—if defect it be—could have been remedied by amendment on motion; and as we are satisfied that there is enough in the record to be pleaded effectually in bar of any other suit on the same instrument, we think the objection wholly untenable. See sec. 16 of the Act to Regulate Proceedings in Civil Suits.

The only serious difficulty which has suggested itself in this case arises out of the fact that the loss of the instrument occurred after the suit was instituted upon it, and no amendment to the petition was directed by the court below, stating the loss of the note, so as to make the proof correspond to the allegations. The authorities upon this point appear to be contradictory. In the case of Smith v. Woodward, 4 East, 585, it was ruled, in debt upon bond, where the plaintiff declared upon the instrument, as if still in existence, and made a profert of it, he could not be permitted to prove the loss of the instrument, which occurred before the institution of his suit; and it was said by the chief justice, that if the loss had occurred after the bond had been declared upon, the plaintiff should move the court to postpone the trial and amend his pleadings to suit the circumstances. But this case has been overruled by the Supreme Court of the United States in the case of Renner v. Bank of Colombia, already cited, in which the judge who delivered the opinion of the court says, on this point: "It is objected lastly, that

---

**Note 52.**—Board of Land Commissioners v. Walling, p. 524.

[1] Mandamus can not be resorted to against the State without its consent. Hosner v. De Young, 1 T., 764; League v. De Young, 2 T., 497; Auditorial Board v. Arles, 15 T., 72, 75; Marshall v. Clark, 22 T., 23; H. T. Ry. Co. v. Randolph, 24 T., 317, 342; Ex parte Towles, 48 T., 413, 447; Taylor v. Hall, 71 T., 206; Thompson v. Baker, 90 T., 163.

[2] State can not be sued in her own courts without her consent, and then only in the manner indicated by special permission. Hosner v. De Young, 1 T., 764; Howard v. McSherry, 2 T., 311; League v. De Young, 2 T., 497; Bryan v. Sundberg, 5 T., 418; Marshall v. Clark, 22 T., 23; Rose v. Governor, 24 T., 496; Treasurer v. Wygall, 46 T., 447; Ex parte Towles, 48 T., 413, 447;

secondary evidence was not admissible without a special count in the declaration upon a lost note. The English practice on this subject has not been adopted in this country, as far as our knowledge of it extends, and to require a special count upon a lost note would be shutting the door against secondary evidence in all cases where the note was lost after declaration filed. We do not think any danger of fraud is to be apprehended from the admission of such evidence, under the usual count upon the note; and the practice of the court below not requiring any special count in such cases, no error was committed in the admission of the evidence."

The English decision seems to be founded upon the necessity existing there of making a profert in curia of a bond, and as the plaintiff could not show the bond upon oyer being craved, it became necessary to amend his declaration, by stating the loss of the bond, and thereby avoid the necessity of making a profert, or of bringing it into court. But in the case under consideration it was not necessary for the plaintiff in the court below to make a profert of the instrument sued on, and we therefore incline to lean on that account—as well as for other considerations unnecessary to be recited—to the American authority, and to decide that in the present case the want of such amendment of the petition is not a sufficient ground for the reversal of the judgment. Let the judgment below be in all things affirmed, with costs.

*Affirmed.*

### No. IV.

#### WARD ET AL. v. BOON.

##### (See Note 63.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—Boon sued Ward, Linnecum and others in the District Court of Red River County at the spring term, 1842, in an action of trespass vi et armis, charging that the defendants had beat, bruised, and otherwise maltreated him, etc.; and laid his damages at $20,000. The parties were neither of them served to the first term of the court. At the subsequent or fall term, 1842, the writs were returned "executed" on all the defendants. Ward was served on the 25th of August, 1842. The term of the district court commenced on the first Monday in October thereafter.

At that term of the court, viz., on the 7th of October, Ward made an application for a continuance, on the ground that he had not been able to procure the attendance of his witnesses. W. Peacock, one of the witnesses, lived at the distance of sixty or sixty-five miles from the

---

Taylor v. Hall, 71 T., 206; T. M. Ry. Co. v. Jarvis, 80 T., 456; Thompson v. Baker, 90 T., 163. Statutes giving privilege to sue State are strictly construed in favor of the State, so as not to extend the privilege to those not clearly intended. Rose v. Governor, 24 T., 496. It seems that the same strictness is not required when suit is for assets of estates deposited with State.

courthouse. Afterwards, to wit, on the 14th day of October, Ward filed his supplementary affidavit, alleging the discovery on the day previous (the 13th), that one Robert Smith, a transient person, was a material witness, and praying for a continuance. The affidavit contained the usual necessary averments. Morton and Wilson at the same time filed their affidavit for a continuance, alleging that Robert Smith, a transient person, was a material witness for their defense; that they had only come to the knowledge of his materiality, etc., on that day.

The court overruled the several applications, whereupon came a jury, etc., who found the defendants guilty of the assault and battery, as charged in the plaintiff's petition, and assessed his damages at $1475 and costs of suit; upon which said verdict, the judgment of the court was entered, and the defendants gave notice of appeal. The statement of facts submitted presents also the following matter:

"During the progress of the trial in this cause, the plaintiff introduced Abner H. McKenzie as a witness. Upon the suggestion of said McKenzie that his testimony might render himself liable, and that therefore he hesitated to answer the questions, plaintiff in open court stated that he released McKenzie from all damages that he, McKenzie, was liable to him for, and in consideration of any trespass that he, McKenzie, committed at the time and place mentioned in plaintiff's petition. Witness then stated that at the time of the alleged trespass in plaintiff's petition, at the request of Linnecum, one of the defendants, that some one would lend said Linnecum a handkerchief, witness brought said Linnecum his handkerchief, with which said Linnecum blindfolded the plaintiff."

Defendants then moved that the suit be dismissed, which was overruled. Defendants then asked leave to withdraw their plea and plead a release puis darein continuance, which was overruled; to which defendants excepted.

There are two questions to be decided in this case.

1. Did the court below err in refusing the applications for a continuance?

2. Was the release of McKenzie such a release as would operate in favor of the defendants, who, it is alleged, were cotrespassers?

We are of opinion that an application for the continuance of a cause addresses itself to the discretion of the court, and is to be determined by the court with a proper regard to the circumstances of the case and the nature of the application. And this discretion, in whatsoever manner exercised, will not be revised by this tribunal. We believe that there is

Treasurer v. Wygall, 51 T., 621; Dodson v. Wortham, 18 T. C. A., 666. An individual sued by the State, can not set off claims against State, unless expressly authorized by statute. Borden v. Houston, 2 T., 594; Bates v. Republic, 2 T., 616; Chevallier v. State, 10 T., 315; Dean v. State, 54 T., 313, 314; State v. Snider, 66 T., 687; Sweatman v. Sanders, 85 T., 294, 300.

[3] A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commrs. v. Bell, Dal., 366; Land Commissioners v. Reily, Dal., 381; Republic v. Skidmore, Dal., 581 Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill

nothing in our statutes, or in the rules prescribed for the government of the district courts in regard to continuances, which would lead us to the adoption of a different conclusion. 1 Ala. (N. S.), 276; Hill v. Gayle and Bower, 2 Cond. Rep. (U. S.), 97, 172.

A release entered on the minutes of the court is not such a release as would be binding on the party. Had the witness McKenzie been incompetent from interest, such a release as was here entered would not have made him competent. 2 Porter, 401. A release should be signed, sealed and delivered to the witness to have made it binding. Id. But in this case the release was wholly without consideration and void, of course. If McKenzie had been in truth a joint trespasser, the statute of limitations had barred all right in Boon to maintain an action against him when called on to testify.

Let the judgment of the court below be affirmed.

*Affirmed.*

Concurred in by Judges Baylor and Morris.

Judge William J. Jones says: "I concur in the foregoing opinion, with the understanding, that the error of the judge (if any) may be reached by a motion for a new trial, which should be made by the party refused the continuance in the court below."

Chief Justice Hemphill says: "I concur in the result of the foregoing opinion, but dissent from that portion thereof which decides that the discretion of the court below in relation to continuances is final, conclusive, and not revisable by this tribunal, in whatever manner that discretion may have been exercised."

Judges Jack and William E. Jones say: "We dissent from so much of this opinion as decides that no appeal lies from the decision of a district judge in refusing to grant a continuance upon proper showing. We think the judgment in this case ought to be reversed and the case remanded for a new trial, on the ground that the district judge erred in not granting a continuance. On the other point decided we concur with the majority of the court."

---

v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee in good faith, intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Titles issued by alcaldes and commissioners after closing of Land Office, by Act of Consultation on November 13 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Bains, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only

## No. V.

### Robertson v. McMillan.

(See Note 64.)

*Error from Robertson County.*

OCHILTREE, JUSTICE.—Andrew McMillan, the defendant in error, sued Randall Robertson for possession and damages for the occupation of a certain tract of land situate in the county of Robertson.

An issue was made to the country. At the October term, 1840, a jury of twelve men, whose names are set forth in the record, came and were sworn and charged to try the issue joined, viz: James Schofield, Thomas Eaton, J. L. McMurray, R. H. Porter, Robt. M. Christian, Harrison York, S. B. Keloc, E. Donelson, Charles Sevier, James Hudson, J. C. McCristan, George W. Shirer. The jury, after the case had in due form been submitted to them, returned into court this verdict: "We the jury find the issue joined in favor of the plaintiff, and assess his damages to one dollar. (Signed) S. B. Kellough, Foreman."

Immediately in connection with which verdict is this judgment of the court: "Therefore it is considered by the court that the plaintiff recover his costs in this behalf expended, and the defendant," etc.

On the 10th September, 1841, the defendant sued out a writ of error in which was made the following assignments:

1. That from an inspection of the record there does not appear to have been a lawful jury impaneled to try the issue in the case.

2. The jury by their verdict do not find that the title to the premises described in said McMillan's petition is in said plaintiff, but find only that his damages are one dollar; and that the judgment rendered thereon by the court is not according to the verdict, because the court awards only that the plaintiff do recover his costs, and gives no judgment for damages.

3. Assigns error in the execution which issued thereon, etc.

4. Assignment also relates to a proceeding subsequent to the judgment.

5. Assignment is, that the petitioner's counsel failed to except to an improper charge of the presiding judge, and asks the revising court to give him the benefit of the error now.

In the examination of this case we will confine ourselves to the judgment and the matters preceding. With the execution, or writ of habere facias possessionem, we have nothing to do. If those proceedings, or either of them, were erroneous, the party agrieved had his remedy in

---

establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Reily, Dal., 381; Republic v. Skidmore, Dal., 581; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75

the court below, from whose final judgment only the right of an appeal lies to this court. We will therefore proceed to a brief examination of the errors assigned, which are properly before us.

1. "From an inspection of the record, there does not appear to have been a lawful jury impaneled to try the issue in the case." We were more particularly informed by the argument as to what was considered by the plaintiff in error the objection to the jury than by the assignment itself. Indeed, from an examination of the record we find nothing approaching error in the impaneling of the jury, for it appears that there were twelve good and lawful men who came and were sworn to try the issue joined between the parties, etc. It is contended, however, that the name of the foreman who returned the verdict of the jury into court does not appear on the lost of jurors. In the list of names we find *S. B. Keloc,* and the name signed to the verdict is *S. B. Kellough.* Without following the learned counsel for the defendant in error in his ingenious argument upon the idioms of different nations, and the arbitrary pronunciation of those proteus letters, "ough," we will say that from all the concurrent circumstances, we are irresistibly led to the conclusion that *S. B. Keloc* and *S. B. Kellough* are one and the same persons.

We hardly think that the presiding judge would have permitted a substitute to have taken the prominent position of foreman of the jury, or that the astute counsel for the defendant below would have failed to have observed it and predicated a motion for a new trial or in arrest of judgment, for an error so glaring. We think it was a clerical error, and nothing more.

2. "The jury by their verdict do not find that the title to the premises described in said McMillan's petition is in said plaintiff, but find only that his damages are one dollar, and that the judgment rendered thereon by the court is not according to the verdict, because the court awards only that the plaintiff do recover his costs, and gives no judgment for damages."

The verdict of the jury in this case is not a mere finding for the plaintiff; it goes farther: "We the jury find the *issue joined* for the plaintiff, and assess his damages at one dollar." Here is a manifest reference by the jury to the pleadings. What was the issue joined? The right of possession to the land, described in the plaintiff's petition and defendant's answer, as being the subject of dispute. A verdict, it is true, might have been rendered by the jury more descriptive and more technical; yet we believe that the manifest intention of the jury was to find that the land in contest was the property of the plaintiff, and we will not disturb it. It is considered by the court here, that

T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837, were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528), Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificate of recommendation from Board of Land Commissioners and holders of unrecommended land certificates had no standing in court without it. Norton v.

inasmuch as the judgment of the court below does not respond to the verdict of the jury, the same be reversed, and that this court will proceed to render such judgment thereon as should have been rendered in the court below. It is therefore considered by the court, that the plaintiff in the court below do recover of the defendant below the premises, together with one dollar for his damages, and all his costs in this behalf expended; and that the proper writs issue to carry out this judgment.

*Reversed and rendered.*

## No. VI.

### J. & D. HOLDEMAN v. KNIGHT & WHITE.

#### (See Note 65.)

*Error to the District Court of Bastrop.*

JONES (WILLIAM E.), JUSTICE.—On the 20th August, 1836, Jesse and David Holdeman made their joint and several promissory note to James Knight and Walter C. White, for the sum of $5000, payable on the 1st day of January, 1838, and at the same time executed and delivered a mortgage to secure the payment of the note, upon a league of land on the Colorado River. At the spring term of the District Court for the County of Bastrop, for 1838, Knight, as surviving partner, and James A. White, as administrator of Walter C. White, filed their petition, praying judgment against the Holdemans on the note and a foreclosure of the mortgage. The defendants made no defense in writing, but demurred ore tenus to the plaintiff's petition, which was overruled by the court and a judgment nisi rendered against the defendants, which at a succeeding term, November, 1840, was rendered final, a decree of foreclosure made, and the mortgaged premises ordered to be sold. In March, 1841, the defendants below prayed a writ of error, which being granted, the proceedings are certified to this court for revision.

Five several grounds of error are assigned and relied on for a reversal of the judgment of the court below, which we shall consider in the order in which they are presented.

First. A misjoinder of parties plaintiff in joining Knight, the survivor, with the administrator of the deceased partner White. At common law it can not be doubted, that the surviving partner is the proper plaintiff in suits on behalf of the interests of the partnership, and that the administrator of a deceased partner could not be joined as a coplaintiff with the survivor. This suit was instituted before the introduction of the common law and before the Act of May, 1838, which prescribed the manner of foreclosing mortgages; and the points for our

---

Land Commissioner, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Craw-

consideration must therefore be determined by the rules of the civil law, which was in force at the period of the institution of the suit. The want of civil law works is an acknowledged grievance of no small magnitude, and compels us often to make decisions upon important questions with but few of the authorities upon which the principles are settled. The case under consideration is one of that character, and as we can not have access directly to works which treat minutely of pleadings in the courts under that system, we are compelled to resort to the Louisiana decisions as likely to approximate nearest to those of the civil law. The principles of that system of laws in relation to partnership and the consequences of a dissolution are evidently materially different from those of the common law. In Morris's Heirs v. Ogden's Executor, 11 M. R., 455, it was determined that, "in an ordinary commercial partnership, dissolved by the death of a partner, his heirs have a right to participate with the surviving partners in the liquidation of the partnership affairs, till a partition takes place; and if one of the partners sues to recover a debt due the former firm, the others may be made parties for the assurance of their rights." And in Crozier v. Hodge, 3 L. R., 358, it was determined, that a partner *as such* had no right to sue for or recover debts due from the firm, after the death of a copartner. But the question now under consideration seems to have been directly decided in the case of Cutter v. Cochran, 13 L. R., 485, cited in Benjamin & Slidell's Digest, page 480, section 17, in which it was held that, "on the dissolution of a firm by the death of a partner, the surviving partner can not sue without joining the representatives of the deceased one." In England, where a mortgage is made to two partners and one of them dies, the right of survivorship incident to joint tenancy does not accrue, but an estate in common is created between the survivor and the heirs of the deceased (Rigden v. Vallier, 2 Vesey, 258); and it might therefore be doubted whether, inasmuch as the foreclosure of a mortgage is a chancery proceeding, it would not be proper in England to join the heirs of the deceased with the survivor, in seeking a decree of foreclosure. It is not however essential to our present purpose to decide such a question, as the principles of the English law have nothing to do with the point under consideration; and as the plaintiffs below admit that this was a partnership transaction, the doctrine above stated, which might otherwise apply to this case, is rendered inapplicable. We can not perceive, from all the authorities within our reach, that at the time of the institution of this suit it was improper to join the administrator of the deceased partner as a coplaintiff with the survivor. Nor

---

ford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February 5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates, was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time

can we perceive any possible injury which can result to the defendants below by such joinder; none of *their* rights are in any way affected or compromitted by it.

The second ground of error assigned is, that the administrator, if not improperly joined, did not make a profert of his letters of administration. This objection not having been made in the court below, it is too late to attempt to take advantage of it now, were it even deemed a necessary averment.

The third ground is, that the instrument prayed to be foreclosed is not a mortgage, and that it was executed by but one of the defendants, and that there was no proof of a partnership between them. The instrument on its face purports to be a mortgage; and although it is not in the usual form known to the common law, of an absolute conveyance by deed, with a condition to be void upon payment of the debt for which it is pledged, yet we can not look upon it as anything else but a mortgage of a strongly marked character. The parties appear to have been unusually circumspect in its execution in the presence of a large number of subscribing witnesses, and they expressly "pledge, hypothecate and mortgage" the land described in it, and stipulate that on failure to pay their debt, the judge having jurisdiction of such cases may order a sale of the premises to raise the money. The objection that it was executed by Jesse Holdeman only, and that there is no proof of partnership, is entirely obviated by the act of David Holdeman in his acknowledgment before the chief justice of Bastrop County, as notary public, that Jesse Holdeman was authorized to execute the instrument.

It is urged in the fourth place that there was a misjoinder of actions in praying for judgment on the note and a foreclosure of the mortgage in the same action; and that thereby the defendants were deprived of the right of a trial by jury. This ground is equally untenable with the others. It can not be denied that the plaintiffs had a right to proceed to judgment on the debt in a common law action, or to procure a decree in chancery for the foreclosure of the mortgage. A plaintiff may elect either remedy, or he may proceed with both concurrently. 4 Kent, 184. Where the chancery and common law jurisdictions are vested in separate tribunals, if he availed himself of both remedies it would necessarily have to be done in separate courts; but under our laws both jurisdictions are blended in the same tribunal, and as the plaintiff can have but one satisfaction, there can be no necessity for him to seek but one judgment, or be compeled to resort to two suits, in the event the mortgaged premises do not satisfy the debt. We are of the opinion that it is a correct practice to proceed at the same time, and in the same action,

---

allowed by Constitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas, vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett v. Land Commissioner, 28 T., 687. Under Act of April

to seek a judgment on the debt and a decree of foreclosure of the mortgage. The defendants can not complain that they were deprived of a trial by jury; they made no defense in the court below to the merits of the case and were therefore not entitled to a trial by jury; they relied both in that court and in this on technicalities, and it is too late to complain of being deprived of a trial by jury, which they never sought.

The fifth and last objection—that there is no judgment rendered in the court below upon which an execution can issue—is easily remedied by rendering such judgment here. A judgment nisi having been previously taken for the principal sum of $5000, with interest at 5 per cent per annum from January 1, 1838, and costs, and at the November term, 1840, the same having been made final, without computing the interest up to the judgment, and the same being defective, the court proceeds to render such judgment as should have been rendered below. It is therefore ordered, adjudged and decreed by the court here, that the judgment of the court below be set aside, and that the defendants in error in this court do recover of the plaintiffs in error the principal sum of $5000 debt, and the further sum of $703.33, interest up to the 23d November, 1840, with interest on the principal sum at 5 per cent per annum from the 23d November, 1840, until paid; together with costs of suit in this behalf expended. It is further ordered, adjudged and decreed, that the mortgage described in the petition of the plaintiff in the court below be foreclosed; and that the mortgaged premises in said mortgage described be exposed to sale in terms of the statute, and the surplus, if any there be arising from the sale, be paid to the appellants; and if there shall not be a sufficiency to satisfy this judgment, that the appellees have execution for the residue; and that this judgment be certified below for execution.

*Reversed and rendered.*

## No. VII.

### JAMES SMITH v. NATHANIEL TOWNSEND.

(See Note 66.)

*Appeal from Travis County.*

HEMPHILL, CHIEF JUSTICE.—The action in this case was instituted for the recovery of damages for alleged trespass on real property. During the progress of the trial an instrument was introduced purporting to be a copy of a public act of sale from one Jesse C. Tannehill to the plaintiff, which was objected to; and a bill of exceptions is filed in the record, containing all the points in controversy on which the action

25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry. Co., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Rev.

of this court is requested. The competency of the instrument as evidence is excepted to on the grounds:

1.   That the instrument was not the original deed from Tannehill to plaintiff.

2.   If it were, the same was not sufficiently authenticated.

Tannehill proved that he never signed the instrument referred to, but that he had conveyed the land therein described, by another deed signed by himself. It was in proof that such instruments were made out as second originals, in conformity to the then custom of the country; that the second original was never signed by the grantor or grantee, but by the judge of the first instance, or other officer, with instrumental and assisting witnesses, and that the same, when thus executed, etc., was the only evidence of title which the grantee received from the grantor.

The instrument, to the introduction of which exception was taken, has been sent up to this court for inspection, and purports to be a copy of a public act of sale, executed on April 25, 1835, in the town of Mina, before Thomas J. Gazley, judge of the first instance of the jurisdiction of Mina. It is certified to be a true copy of the original (with the addition of the plot), which remained in the office, under the charge of the said judge. The certificate was dated on the day of the execution of the original, and was signed by the said judge with two assisting witnesses.

In considering the first objection, we have to regret that the want of authorities in relation to the former laws of the country prevents us from attaining—on some of the points involved in this case—to conclusions which are altogether satisfactory. Guided, however, by the feeble and confused lights with which we are furnished, we proceed to decide this controversy, confining our opinion to the points which must necessarily be adjudicated.

No objection was taken to the act as not having been executed before a notary public, and any examination of the powers of a judge of the first instance to authenticate public instruments is therefore rendered unnecessary. It was treated as a notarial act and will be considered as such.

Is, then, a copy of a notarial act admissible in evidence without the production of the original? And if so, does the mere production of the instrument cause full proof of its contents, without evidence as to the capacity or signature of the notary and assisting witnesses?

In the case of the United States v. Perchman, 7 Peters, 51, the claimant offered in evidence a copy, from the office of the keeper of the public archives, of the original grant on which the claim was founded; and it

---

Stats. 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v. Cuellar, 80 T., 249. So long as the title is imperfect or inchoate, the State may establish such regulations as it may deem necessary to perfect the title, and attach such terms as it may deem proper. It may even disavow. Land Commissioners v. Reily, Dal., 381; Johns v. Republic, Dal.,

was decided, that on general principles of law, a copy given by a public officer, whose duty it is to keep the original, ought to be received in evidence. The seal and signature of the governor who made the grant was proved; and the judge in the court below added, "that where either party would suggest that the original in the office of the keeper of the public archives is deemed necessary to be produced in court, on motion therefor a subpœna will be issued by order of the court for said keeper to appear and produce the original for examination."

Justice Story in delivering the opinion of the court in Owings v. Hull, 9 Peters, 625, after noticing the high credit and authenticity of contracts and other acts executed before notaries in Louisiana and in all other countries using the civil law, proceeds to state, that "where a contract or other act is executed in a particular manner before a notary, the proctocol or original remains in his possession apud acta; and the act is deemed what is technically called 'an authentic act;' and a true copy by the notary, who is the depository of the original, or his successor, is deemed proof of what is contained in the original; for the plain reason, that the original is properly in the custody of the officer and not deliverable to the parties." He refers to the Civil Code of Louisiana from article 2231 to 2250. "It was decided that, the absence of the original being duly accounted for by its remaining in possession of the notary, the copy being *duly proved* was properly admissible in evidence."

In the case of Mitchell v. United States, 9 Peters, 732, objection was made to the admission of copies of certain acts of confirmation of Indian sales made by Governor Folet. It was not sustained. The court say, "that deeds of confirmation were made according to the rules of the civil law adopted by Spain, and in force in Florida and Cuba. The original is a record and preserved in the office, which can not be taken out; a testimonio, or copy, is delivered to the party, which is deemed to be and is certified as an original paper, having all the effect of one in all counties governed by the civil law." The instruments produced were regarded by the court as original deeds of confirmation. Their authenticity as public documents was proved, and the official signatures were established by the testimony of witnesses.

Adverting now to such Spanish works as are within reach of the court, we find Sala in his fourth book treating, but briefly, of the execution of public instruments and their force and effect when introduced in evi-

621; Hosner v. De Young, 1 T., 764; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Norton v. Land Commissioner, 2 T., 357; League v. De Young, 2 T., 497; Kemper v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Smith v. State, 5 T., 397; Jones v. Borden, 5 T., 410; Warren v. Shuman, 5 T., 441; Land Commissioners v. Smith, 5 T., 471; Paschal v. Perez, 7 T., 348; Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Hamilton v. Avery, 20 T., 612; Peck v. Moody, 23 T., 93; Sherwood v. Fleming, 25 T. Supp., 408; Smith v. Taylor, 34 T., 589; Snider v. Methvin, 60 T., 487; Capp v. Terry, 75 T., 391; Jones v. Lee, 86 T., 25; Thompson v. Baker, 90 T., 163; League v. De Young, 11 How., 185. Applicant to establish headright claim under Acts of December 14, 1837, and February 4, 1841, was required to prove both actual residence at date of declaration of independence and continued residence to time of making application to establish claim. Republic v. Skidmore, Dal., 581; Jones v. Re-

(571)

dence. We have not discovered in this work any satisfactory solution of the question under consideration. In Book 3, title 7, of the Institutes of Aso and Manuel, page 297, it is laid down, that a "public instrument is divided into three classes: the original draft, register, or protocol—the original—and the copy. The register is the original draft, or writing, which is delivered and remains in possession of the escribano, which we also call protocol; by which doubts are determined that may be offered with respect to the instruments which are copied from it. The deed which is immediately copied from the protocol is the original, which causes faith; inasmuch as it is authorized by the public escribano, before whom it passed, or by him to whom the protocols of the latter have passed; but if another escribano copies it, with the authority of the judge and citation of the party, it is valid."

In 3 Partidas, title 19, Law 9, notaries are required to have a book to serve as a register, in which they must write the minutes of every act required by the contracting parties; from which they draw up the public act itself and deliver it to the person entitled thereto. In a note to this law a decree is referred to, from which doubtless may be deduced the practice of executing notarial instruments as known to this country under its former laws and governments. In this decree, dated in 1503, notaries were required to draw up on their registers the original act in full, and not by notes or minutes. A copy is then furnished the party to serve him instead of the act itself, which was formerly made out from such notes. Febro. Lib. Escrie, chap. 16, Nos. 3, 9.

From the authorities and laws to which we have referred, as well as from the facts proven in this case, we conclude that copies of notarial acts were (at the time of the execution of this instrument) regarded in contemplation of law as originals; that they were the only evidence of title which the party interested was entitled to retain in his possession, and that they are properly admissible for all the purposes which by the introduction of the originals themselves could be effected. In the cases of Perchman and Mitchell et al., cited from the United States Reports, proof was made of the official seal and signature of the public officer from whom the copies emanated; and in the case of Owings v. Hull the copy of the notarial act is described as duly proven. In the case before us, no objection was urged on the ground that proof was not made of the official capacity and signature of the judge, or of the signatures of the witnesses. The court at which the trial below was had was within the limits of the territory once designated as the juris-diction of Mina, and the facts above alluded to were perhaps matters of public notoriety, and proof of them was not required. We confine our-selves however to the grounds on which this appeal was taken, and will

public, Dal., 621; State v. De Casinova, 1 T., 401; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Land Commissioners v. Riley, 3 T., 237; Paschal v. Perez, 7 T., 348; Jones v. Montes, 15 T., 351. Under Act of February 5, 1841 (Gammel's Laws of Texas, vol. 2, p. 635), applicants for headright claims were required to make same proofs as under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404).

not enter into the question of the proofs, which under many circumstances might be required, to establish the authenticity of copies of public instruments; nor will we enumerate the cases in which the production of the originals might be deemed essential, nor the causes for which their validity might be attacked and destroyed.

These and similar questions will be disposed of when they properly arise in cases which may be presented for our consideration.

The second objection urged in the bill of exceptions is, that the instrument before us is not sufficiently authenticated.

This is vague and indefinite in its terms, and no notice having been taken of it in the argument, we can not ascertain with any certainty the grounds on which it was raised. There being no glaring defect of authenticity in the instruments and none being pointed out for the inspection of the court, we will pass over this point without further remark or attention. The law and facts of this case being considered, we are of opinion that the court below did not err in admitting the instrument excepted to; and it is therefore ordered, adjudged and decreed that the appeal be dismissed.

*Dismissed.*

## No. VIII.

### CORPORATION OF BASTROP V. GILMORE AND REDDING.

*Appeal from Travis County.*

HEMPHILL, CHIEF JUSTICE.—In this case, judgment being given for defendants in the court below, the corporation appealed and (as stated in the record) entered into bond and security for the costs according to law. No copy of this bond was sent up with the transcript, and the appellees not having appeared in court and waived any rights to which they are by law entitled, we are of opinion that the case is not properly before us for adjudication, and it is therefore, ordered that the same be dismissed.

*Dismissed.*

## No. IX.

### ROBERT HAMILTON V. BATTLE AND FORT.

*Appeal from Bowie County.*

JONES (WILLIAM E.), JUSTICE.—This was an action commenced by the appellant, Hamilton, against the appellees, Battle and Fort, in the court below on an instrument in writing expressed in the following

---

State v. De Casinova, 1 T., 401; Babb v. Carroll, 21 T., 765. The power of district courts to hear and determine headright claims was special, and a strict and literal compliance with all conditions, restrictions and limitations on this power was required to give jurisdiction. As a general rule, the suit

words, viz: "In the month of February, 1843, we or either of us promise to pay to Wm. B. Hawkins, his heirs or assigns, four thousand dollars worth of ginned cotton, at eight cents per pound, for value received of him; the said cotton to be of the best quality made by us and to be delivered at McKinney's, or J. W. Fort's landing.  Given under our hands and seals this 16 December, 1841.  Owen D. Battle (Seal.) J. W. Fort (Seal)."

This written instrument was transferred by assignment on the 18th day of January, 1842, by the obligee, Hawkins, to the appellant in this case.  The defendants in the court below plead tender by defendant Battle and refusal by Hamilton, the assignee.

The evidence as sent up to this court in the statement of facts is substantially as follows:  That in the month of February, 1843, Battle delivered at M'Kinney's landing 120 bales of cotton, being his entire crop; out of which he weighed out 107 bales, making in the aggregate over 50,000 pounds of ginned cotton, which he set apart and tendered to the authorized agent of Hamilton; at the same time offering him choice out of the remaining thirteen bales, in lieu of any portion of that set apart for him.  The agent refused to accept it in payment of the debt, saying that Hamilton considered the note a joint one and that he had a right to a selection out of the crops of both defendants.  There was no positive proof that the defendant Fort raised any cotton, the only testimony on that point being that of one witness, who stated that he saw a few bales of cotton at Fulton, marked "J. W. Fort," and was told by Fort that it was his and that it was very good cotton.

Upon this evidence the jury returned a verdict for the defendants in the court below, and a judgment was rendered thereon accordingly. The counsel for Hamilton moved the court to grant a new trial on the ground, "that the jury found against the law and evidence in the case and against the charge of the judge."  That motion being overruled, Hamilton appealed to this court.

It is insisted by the counsel for the appellant that "by the evident terms of the agreement he was entitled to a selection out of both crops of the appellees;" and that although it is conceded that either defendant might pay the debt, "yet it must be done in accordance with their agreement, by tendering cotton of the best quality out of both their crops;" and as the evidence disclosed the fact that a tender was made by but one defendant and out of but one crop, that therefore the verdict of the jury was against the law and evidence of the case; that the judgment ought to be reversed, and such judgment rendered by this court as should have been rendered by the court below.

Although the technicalities and circumlocution of special pleading as

could only be brought in the county where the claimant resided at the time of the passage of the law authorizing suit.  State v. Manchaca, 1 T., 586; Jones v. Menard, 1 T., 771; State v. De Casinova, 1 T., 401; Linn v. State, 2 T., 317; Kempner v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Jones v. Borden, 5 T., 410; Capp v. Terry, 75 T., 391; Mexican Ry. Co. v. Jarvis, 80 T., 456.

practiced under the common law have been discarded in this Republic by statutory provisions, yet it is not to be understood that recoveries can be had in our courts except in accordance with the state of the pleadings; nor is the plaintiff absolved from the necessity of setting out in his petition, fully and substantially, the grounds of his complaint upon which he seeks a judgment in his favor. In actions upon bonds and notes payable in specific articles, it is necessary for the plaintiff, in order to convert it into a money demand, to allege, clearly and substantially, the failure or neglect of the defendant to perform the contract by the delivery of the specific property in accordance with the terms of the contract, and his own right to recover money consequent upon that failure. In all such cases the obligor or promissor has his election of either alternative—to deliver the property at the time and place specified in the contract, or to pay the money. It is only upon his failure to perform the first alternative that the obligee's or promissee's right to recover the money can accrue; and however clear that right may be, however well grounded his cause of action, he can not recover beyond his allegations of the defendant's nonperformance. In the case under consideration, the appellant, after setting forth in his petition the terms of the contract and its assignment to himself by the original obligee, alleges the nonperformance of the appellees in the following manner, viz: "And the said plaintiff avers that the said defendants, or either of them, hath not as yet paid said sum of $4000 in good ginned cotton delivered at M'Kinney's or J. W. Fort's landing, or any part thereof, as they were bound to do; although often requested so to do." Now it will be readily perceived that he does not allege in his petition the breach of the covenant or promise upon which he relies in this court for a reversal of the judgment. He insists in this court upon his right to recover the money, because he was entitled to a selection out of the crop of both the appellees, whereas he was tendered but one crop for his selection. Were it deemed necessary, it could easily be demonstrated that he was entitled to no such selection; that such a right is not deducible from the terms of the contract; but he does not allege in his petition that he was denied the privilege of selection; he does not set *that* up as a breach of the defendant's obligation, by which he is entitled to demand and recover the money; and not having averred it, he is not entitled to recover for any such breach, if it had occurred. Nor is it alleged in the petition that the defendants had failed to deliver "cotton of the best quality raised

---

**Note 53.**—Gregg v. York, p. 528.

Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Raquet v. Mixon, Dal., 386; Fowler v. Poor, Dal., 401; Sloo v. Powell, Dal., 467; Sydner v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hetmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T.,

by them or either of them." He alleges simply, "that they had failed to deliver good ginned cotton." Such is the issue tendered by him in his petition and he must abide the event of that issue. He can not call upon this court to give judgment upon issues never made in his pleadings in the court below; he can not expect to recover of the defendants upon allegations which he has never called upon them to answer. The testimony discloses the fact that he refused the tender, not because the cotton tendered was not good, but because the privilege of selecting out of both crops was not tendered to him. There is nothing in the evidence to induce the belief that the cotton was not such as he alleges a failure on the part of the appellees to deliver; and as that was a question proper to be ascertained by the verdict of a jury, we see nothing in this record to justify us in reversing the judgment.

Nor is it necessary here to enter into a discussion as to the construction which should be given to the obligation upon which this suit was instituted, or the capacity of either defendant to discharge the debt by a tender out of his own crop alone. Such a discussion is not rendered necessary by the state of the pleadings in the district court. It will be sufficient to add to what has already been said, that, admitting as the appellant contends that the obligation was *several* as to the persons only who might make the actual tender, but *joint* as to the fund out of which the tender should be made, and that the appellant was entitled to a tender of cotton of the best quality raised by both the appellees, we should not still be justified in reversing this judgment; for it does not appear to have been satisfactorily shown to the jury that any other cotton was raised by them, other than that which was tendered to the appellant; nor does it appear that if any other was raised by them it was of a quality inferior to that which was tendered. Let the judgment of the court below be affirmed with costs.

*Affirmed.*

Judge Morris says: "I dissent from both the points decided in this case."

Judge Ochiltree says: "I concur in the result of this opinion of my brother Jones and generally in the reasoning; there are some minor points in the case on which I entertain opinions variant from those herein contained."

610; Focke v. Hardeman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352.

**Note 54.**—Huff v. McCreary, p. 528.

Plaintiff must have notice of rule for costs, in order to visit upon him the consequences of failure to comply with same. Houston v. Sublett, 1 T., 523; Clute v. Ewing, 21 T., 677, 679; Holshousen v. Hollingsworth, 32 T., 86; Marks v. Fields (T. C. A.), U. R. C., 1895; Frazer v. Moore (T. C. A.), U. R. C., 1902. Entry of rule on judge's docket is not sufficient notice. Motion should be made and entered on motion docket. Shackelford v. Wallace, 4 T., 239; Marks v. Fields (T. C. A.), U. R. C., 1895. Rule for costs may be entered at any time before final judgment. I. & G. N. Ry. Co. v. Williams, 82 T., 342; Frazer v. Moore (T. C. A.), U. R. C., 1902. May be complied with at

## No. X.

### H. H. WILLIAMS & CO. v. GAIL BORDEN, COLLECTOR.

*Appeal from Galveston County.*

HEMPHILL, CHIEF JUSTICE.—The questions arising in this cause are novel in their character, involve interests of immense magnitude, and affect deeply the energies and operations of the government itself. We have experienced considerable difficulty in forming an opinion, and have hesitated long in its expression. Owing to the intrinsic difficulties presented for our solution, to the shortness of the period elapsing since we have received the additional argument, to the enfeebled condition of the health of several of the judges, and other like circumstances, we will be unable to deliver an opinion containing at length and in detail the reasoning in support of the conclusions to which we have arrived. In the meantime considerations of public interest, forcible in their character, urge us to state these conclusions and generally some of the grounds on which they are based.

We are of opinion, then, that the court below did not err in sustaining the demurrer of the defendant.

The correctness of the judgment is founded on the constitutionality of the act "To regulate the collection of impost duties," approved July 23, 1842. We have examined the provision of the act complained of by the appellant, and do not regard it as in conflict with the Constitution. This opinion is founded on a due consideration of the various grants of power by which Congress is authorized ."to levy and collect taxes and imposts, excise and tonnage duties; to regulate commerce, coin money, and regulate the value thereof;" and also on the general authority of Congress "to pass all laws which may be necessary and proper to carry into effect the express grants of power." The statutory provision complained of does not, it seems to us, transcend the limits which are proper for the exercise of the foregoing powers; and it is also sustained and supported, as being within the scope of the attributes of sovereignty which is vested in this as in other independent governments.

For these and other reasons which will hereafter be set forth at length, we are of opinion that the judgment of the court below should be sustained, and it is ordered and adjudged accordingly.

*Affirmed.*

Judge William J. Jones dissenting.

---

any time before case is dismissed. Cooke v. Beasley, 1 T., 591; Rhodes v. Phillips, 2 T., 162; Hayes v. Cage, 2 T., 501; Cooke v. Ross, 46 T., 263; Bateman v. Maddox, 86 T., 553; Posey v. Aiken, 17 T. C. A., 44. After rule has been complied with, plaintiff can not be ruled for additional security without notice and affirmative proof that the security given is insufficient. Houston v. Roberts, 10 T., 348; Holshousen v. Hollingsworth, 32 T., 86. When defective new bond may be given, if no notice is taken of the defect for several terms, court may disregard motion to dismiss. Herndon v. Rice, 21 T., 455. Case dismissed for failure to comply with rule should be reinstated upon a

## No. XI.

### JOSEPH HARLAN v. JOHN BAKER, USE JOHN WELCH.

#### (See Note 67.)

*Appeal from Robertson County.*

JONES (WILLIAM J.), JUSTICE.—On the 12th day of June, 1838, Joseph Harlan executed his note to John West or bearer for $300, payable as soon as said West could make him a good and sufficient title to one-third of a league of land. The plaintiff in the court below avers that West, oftentimes before the institution of the suit, offered to make Harlan the title stipulated in the bond (produced on the trial in the district court and referred to in the note sued on), but which the appellant refused to accept. The land certificates (described in the bond) were placed in the hands of appellant for location, entry and survey.

The plaintiff below further avers that Harlan not only neglected and refused to perform his part of said agreement, in preparing the surveys of the land for patent, but willfully abstained therefrom to avoid the payment of his note.

The note sued on was assigned by the payee to John Baker on the 24th day of October, 1838.

The defendant filed a general denial.

The agreement of West and Harlan, produced on the trial below, contains mutual covenants. The former obligated himself for the consideration of $555.37 (of which the note in suit was part) to make a good and sufficient title to the latter for one-third of a league of land, as soon as the patent could be obtained. Harlan was required in the bond to locate the land within the time of preference given to first class of headright claimants, unavoidable accidents excepted.

John West, the payee of the note, was offered by the appellee as a witness, under a full release from the plaintiff in interest of all responsibility in consequence of his indorsement of the note. The defendant excepted to his testimony upon the ground of interest, which was overruled by the court.

It was proved that one of the certificates, No. 84, was deposited in the office of the county surveyor of Robertson County, and that under it the defendant had made a fractional survey on the 10th day of January, 1841.

The jury found for the plaintiff the full amount claimed in his petition.

The first ground of error, assigned by the appellant, is the introduction of the original payee of the note as a witness in the court below, without

reasonable showing why the rule had not been complied with. Bank v. Hudgeons, 3 T., 9; Shackelford v. Wallace, 4 T., 239; Frazer v. Moore (T. C. A.), U. R. C., 1902. Sickness of plaintiff and his attorney, ground for postponing dismissal. Cook v. Ross, 46 T., 263. Judgment of dismissal for failure to comply with rule may be appealed from. Shackelford v. Wallace, 4 T., 239; Miller v. Holtz, 23 T., 138. Case will not be reversed merely on ground that court erred in dismissing for failure to comply with rule. Cooke v. Ross, 46 T., 263. On dismissal, defendant is entitled to judgment for costs.

a full release from the plaintiff of *record* for costs, as well as principal of suit and all responsibility which might subsequently arise; and that the release executed is not a full and entire discharge of the disqualifying interest.

The second cause of error assigned is, that the court below did not instruct the jury that the obligation of the defendant to locate land related to *one* only of the certificates mentioned in the agreement of West and Harlan.

Upon the first ground of error the general rule of law is, that the objection to the competency of the witness on the score of interest or responsibility is removed by an extinguishment of such interest or responsibility, through the means of a release executed by those who would have a claim upon him.

Another principle of law equally well established is, that evidence can not be excluded by refusing assent to a release tendered to a witness from the party who holds the right to discharge him from responsibility, if offered before the witness has delivered his testimony.

A release of all the liabilities of the witness, arising from or connected with the principal cause of action, is a *full* release of *all* the *interest* which the witness had or could possibly have of a pecuniary character, or that would under the law exclude his testimony. Any interest, by way of desire to see the plaintiff succeed, must go to his credibility, and not to his competency.

The release in the case before us is, "from all liabilities which he (the witness) may be under to me (the plaintiff in interest) in consequence of his assignment or indorsement upon a certain note (the note sued on) given by Joseph Harlan on the 12th day of June, 1838, to John West, the witness;" and goes on to set forth the amount of the note and the consideration for which it was given. This, then, is the release contemplated by the law, and it is a total· discharge from all liability to pay the sum sued for (costs included) to the plaintiff in interest, under any possible contingency.

Another objection taken by the appellant, as connected with the first error assigned, is that the release, if sufficiently comprehensive in its terms, was not signed by the proper party to the suit.

The language of the law is, that the release shall come from "the party who would have a claim upon the witness." 1 Starkie, 125. This note is payable to John West, or bearer. Who, then, is the party in this case to set up a claim against the witness, if there had been a failure to recover against the appellant? The bearer, John Welch, surely. Then the bearer, John Welch, was the only proper person to execute the release.

Anderson v. McKinney, 22 T., 653. Rule for costs does not suspend preparation for trial. Anderson v. McKinney, 22 T., 653. Affidavit of inability to pay or give security, discharges rule for costs. Hickey v. Rhine, 16 T., 576; Hubby v. Harris, 63 T., 456; M. P. Ry. Co. v. Richmond, 73 T., 568. But it does not relieve affiant from liability for costs. McPherson v. Johnson, 69 T., 484; Harby v. Patterson (T. C. A.), U. R. C., 1900. Affidavit may be made by next friend or plaintiff's attorney, but not by wife. Brooks v. Hicks, 20 T., 666; Crockett v. Maxey, 4 App. C., sec. 292; S. L. S. W. Ry. Co. v. Wil-

We can not travel beyond the record to determine whether the second assignment of error (that the court failed to give the proper instructions to the jury explanatory of the evidence) can more avail the appellant than the point already disposed of.

We do not discover from the statement of facts sent up by the district judge that any special instructions were asked and refused upon the point made in the appellant's brief. The record contains no charge upon the law of this case. We must then presume that the judge gave the jury all the instruction as to the law which he considered necessary, as no exceptions appear to have been taken at the trial.

The instrument sued on and the agreement of the parties in relation to the location, survey and patent of the land, were matter of evidence before the jury. The bond or agreement of the original parties was in itself sufficiently explanatory, to the ordinary understanding, of the obligations of the appellant. The survey of the third of a league of land (to which the payee of the note bound himself to make the appellant a title) was, by the provisions of said agreement to be made with two land certificates, Nos. 84 and 85. The latter not containing the 1481 acres which were to be conveyed, the deficiency was to be taken from the former certificate. Hence the necessity and propriety of evidence relating to certificate No. 84, which the appellant assigns as error.

These were the facts gathered by the jury from the papers submitted to them, as we understand from the record; and if there were any ambiguity proper to be removed by the judge which was not done, it was the duty of the appellant's counsel to have required a special charge of the court upon the matter thus brought to its notice, which, if refused, might have been appealed from.

Where the contrary is not made to appear from the record, the appellate court will presume, that a full charge upon all the law of a case was given by the judge of the district court on the trial below.

It is the duty of counsel when the law of a case, in their opinion, is not fully defined to the jury, to require of the court, in writing, a special charge upon the point or points; and if refused, to bring them up by way of exception or appeal. And if given and objected to by the opposite counsel, to be alike noted by him and brought up for revisal.

It is then considered by the court here that there was no error in the proceedings of the court below, and that the judgment be fully affirmed with costs.

*Affirmed.*

liams (T. C. A.), U. R. C., 1896. Can not be made before a notary public of another State. Jenks v. Jenks, 47 T., 220; Thames v. Chitwood, 24 T. C. A., 391. If affidavit is defective, the defect should be pointed out by motion to dismiss for insufficiency. It is not defective because it fails to name one of the defendants. Hubby v. Harris, 63 T., 456. Quaere—Can defendant without being joined by clerk contest affidavit? Railway v. Duncan, 10 T. C. A., 479. Refusal of court to sustain contest is immaterial when plaintiff recovers. Railway v. Duncan, 10 T. C. A., 479; Wright v. Solomon (T. C. A.), U. R. C., 1898. Limitations do not run until filing of affidavit. G. C. & S. F. Ry. Co. v. Knott, 14 T. C. A., 158. On appeal by defendant in justice court, plaintiff can not be ruled for costs in county court. Foreman v.

## No. XII.

### THE REPUBLIC OF TEXAS v. A. SKIDMORE.

(See Note 68.)

*Appeal from Red River County.*

BAYLOR, JUSTICE.—Skidmore commenced his suit against the Republic in the court below upon a certificate of headright, for the recovery of one league and labor of land, which certificate had been rejected by the investigating board of land commissioners.

The petition contains the usual allegations in such cases, and upon issue joined he obtained a verdict and judgment in his favor for the quantity of land claimed in his petition. To reverse which the Republic prayed an appeal, and assigns for error here, that the verdict is against the law of the case and the evidence adduced on the trial.

The evidence certified to by the judge below is as follows:

"Skidmore came to Texas in February, A. D. 1836, and remained until June of the same year. He left, stating that he intended to return, and did so in April, 1839. Whilst here in 1836 he performed all the duties incident to a good citizen. Upon his return he laid claim to a selection of land made by him in 1836. When he left in 1836, he left (with the intention, as stated by himself, of going for his family; and upon his return he brought his wife and children with him. He also proved by two witnesses that at the date of the declaration of independence he was a married man and the head of a family.

"The Republic upon cross-examination proved by the same witnesses that the family of Skidmore were at that date residents of the State of Alabama, in the United States of North America."

In considering the question whether the verdict of the jury ought to be set aside as incompatible with the evidence and law of the case, we do not deem it necessary to go into all the refined and subtle distinctions as to domicile. It is sufficient to say that in order to make a man a resident citizen within the meaning of the Constitution, he must have resided at the date of the declaration of independence within the Republic, with the *intention* (animo manendi), and that if he left it, he must have quitted the country animo revertendi. Testing the appellee's case by these principles, we think the foregoing statement of facts is too vague and loose to sustain his claim.

There is no satisfactory evidence by two witnesses, as the law requires, that his residence was in this country at the date of the declaration of independence. The record, it is true, states that Skidmore was here at that time; but it is silent as to how that fact was proved. It also states

Gregory, 17 T., 193; Miller v. Holtz, 23 T., 138; T. & P. Ry. Co. v. Taylor, 2 App. C., sec. 418; T. & P. Ry. Co. v. Cook, 2 App. C., sec. 659; Taylor v. Brewing Assn. (T. C. A.), U. R. C., 1897. Same rule on appeal from probate court to district court. Pierce v. Pierce, 21 T., 469.

that he stayed in the country a few months and performed all the duties incident to a good citizen. What those duties were, we are not informed and are left to conjecture.

By his own showing, he was not incumbered with a family; and it is certain, during his stay in the country, Texas expected every man to do his duty. There was nothing, so far as we are informed by the proof, to have prevented Skidmore from rendering military services during that eventful period. Had he performed such meritorious acts, it would have gone far to show that Texas was indeed his adopted country, and that he was not a mere sojourner in the land. Nor can much reliance be placed on his loose and idle declarations, that he intended to return to Texas. Actions speak louder than words. Skidmore's long absence from the country, and that absence being totally unaccounted for by the proof, together with the fact that his home, family and property were in Alabama during all that time, lead us irresistibly to the conclusion that he had not at the date of the declaration of independence made this country his residence animo manendi; and that when he left it, he did not do so with the *certain intention of returning.*

This court has repeatedly determined that it would not in ordinary cases disturb the verdict of a jury unless it was manifestly against the evidence produced on the trial. But the appellee's case is one of that class of cases in which a great national policy is to be effected and carried out; and in doing this, we must take special care to construe the Constitution and laws so that those who receive the bounty and munificence of the government shall give us that increase of population contemplated by the law, within a reasonable time, and the services of its citizens when needed in the hour of trouble and of danger.

Skidmore came to the country, made a selection of land, stayed but a few months, then returned to his home, family and property in a foreign land, there remained with them for nearly three years, without accounting for his long absence. Under such circumstances, to give him all the benefits of a headright claimant of the first class would be a dangerous precedent, situated as our country is, and most disastrous in its consequences to its best interest and happiness. Persons claiming to be emigrants must understand that such equivocal conduct, as evinced in this instance, relative to their *inhabitancy, intention of remaining and returning* to the country, will not entitle them to the liberality of this Republic.

But it is said this decision conflicts with the decision made in the case

**Note 55.**—Huff v. Filger, Lamb & Co., p. 529.

[1] Interest is a creature of local law and governed by the law of the place where the contract is made. Trott v. Patton, Dal., 522; Burton v. Anderson, 1 T., 93; Andrews v. Hoxie, 5 T., 171; Davis v. Thorn, 6 T., 482; Willard v. Conduit, 10 T., 213; Bailey v. Heald, 17 T., 102 (holding that as to an indorser the place of indorsement governs); Whitlock v. Castro, 22 T., 108. Prior to *Acts of January 18 and 20, 1840* (Gammel's Laws of Texas, vol. 2, pp. 177 and 182), legal rate of interest was 5 per cent. Trott v. Patton, Dal., 522; Chevallier v. Buford, 1 T., 503; Davis v. Thorn, 6 T., 482. See Rev. Stats. 1895, arts. 3097-3107.

[2] Nature, validity, obligation, construction and interpretation of contracts

of The Republic v. Young. In that case, it is true, the court went a
great way in sustaining Young's claim. They gave the Constitution and
laws the most benign and liberal construction they could possibly bear.
We think, however, there is a marked difference between the two cases.
Young was here, with the intention of remaining in the country, as we
thought, at the date of the declaration of independence, from the follow-
ing circumstances. He returned to Mississippi, where he had left his
family without any fixed habitation; he had broken up his home pre-
viously to coming to this country; sold all of his real estate and so much
of his personal property as he could not conveniently bring with him to
Texas; he returned to the country without delay where he has remained
ever since, subject to taxation and to do military duty. There is an-
other clear distinction between the two cases. Young resided in this
country from the date of the declaration of independence until the pas-
sage of the land law in 1837, with the exception of his temporary ab-
sence to the State of Mississippi, with the view of bringing his family
to Texas. This temporary absence, under the facts and circumstances
of his case, did not in our opinion preclude him from bringing himself
within the provisions of the twelfth and seventeenth sections of that
law. The twelfth section requires the applicant for land to prove that
he was actually a citizen at the date of the declaration of independence,
and has continued so up to the time of the passage of the act. The
seventeenth section provides, in all cases, that the claimant shall apply
for his certificate of headright in the county in which he or she may
reside at the date of the passage of the law; which was on the 14th of
December, 1837. At the date of this act, Skidmore had no fixed resi-
dence in any county within this Republic; neither could he comply with
the requirements of the twelfth section, for he did not return to Texas
until April, 1839, long after the passage of the act of 1837. From these
considerations, he is clearly not entitled to the benefits of the land law
of 1837. The traveling board of land commissioners therefore did right
in rejecting his certificate for one league and labor of land. See Board
of Land Commissioners v. Walling, decided by this court in 1843.

   Upon the whole, to sustain the verdict and judgment in this case would
be going, in our opinion, one step further than the court went in the
case of The Republic v. Young, and this we do not feel inclined to do,
especially as some of the members of the court were not entirely satisfied
with the doctrines laid down in that case. It is therefore the opinion of
a majority of the court, that the verdict and judgment of the court below
be set aside, annulled and reversed, that the case be remanded, and a

---

are determined by the lex loci contractus, unless a different place is fixed
by the parties for performance. Hill v. McDermott, Dal., 419; Tinnen v.
Mathews, Dal., 491; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T.,
732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie,
5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11
T., 54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v.
Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94
T., 25; Apollos v. Staniforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T.
C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thomp-

new trial awarded in the court below, in order that the appellee may show by additional proof, if he can, whether he be entitled to the amount sued for, or a less quantity; that he be permitted to amend his petition to meet the circumstances of his case, and that he pay the costs in this court expended.

*Reversed and remanded.*

Judge Morris says: "In concurring with the within opinion, I do not wish it understood that any opinion is expressed by me on the point which seems set forth in the reasoning, that it might be and is necessary that a party should be *actually present* in the country at the time of the passage of the land law of 1837."

No. XIII.

### NATHANIEL M. RIKER, SURVIVING PARTNER OF ABRAM RIKER, DECEASED, v. J. P. FREEMAN & CO.

*Two Cases. Appeal from Red River County.*

JONES (WILLIAM J.), JUSTICE.—These cases come up by appeal from the District Court of Red River County, and present the following facts: A. Riker & Co. drew a bill of exchange on the 20th day of September, 1836, in New Orleans, payable twelve months after date, on John H. Graham (which was accepted by him) in favor of J. P. Freeman & Co. for the sum of $272.22; also one other bill of exchange, drawn by the said A. Riker & Co. on the 20th March, 1837, in New Orleans, payable twelve months thereafter, on John H. Graham (which was accepted by him) in favor of J. P. Freeman & Co. for the sum of $539.11. Upon these bills of exchange, two suits were instituted by the appellees in the District Court of Red River County against the appellant.

Upon the trial in the court below the defendant filed his demurrer to the petition of the plaintiffs, which was overruled. One ground of demurrer, inter alia, was the want of the averment of notice of nonpayment, prior to the institution of suits by the holders.

In the examination of the authorities upon this important branch of commercial law by which these cases are to be determined, we find it well settled, that in order to entitle the holders to a suit against the drawers, they must show a demand of the drawee and reasonable notice of default of payment; and to enable the holders to prove notice of demand and failure to pay, the allegations must be plainly and distinctly set forth in their petition.

---

son, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in different states, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci , contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the

It is unnecessary for the court, in these cases, to go into the investigation of what may be considered reasonable notice, as no notice appears to have been alleged by the plaintiffs or attempted to be proven.

The isolated question is then presented: Could the plaintiffs in the court below recover upon the bills sued on, in the absence of the allegations of demand and notice of nonpayment, duly supported by proof? We think not.

There is no portion of the law relating to negotiable paper which has been more fully discussed and clearly defined than that fixing the responsibility of drawers and indorsers, and the circumstances either positive or negative which release them. Why is notice of nonpayment in these cases considered necessary? Let the authorities answer.

In 3 Kent, 104, it is said that the object of notice is to afford an opportunity to the drawer and indorsers to obtain security from those persons to whom they are entitled to resort for indemnity. In 14 Martin, 541, it is decided by the Supreme Court of Louisiana to be obligatory upon the holder of a bill to present it and give notice of its dishonor, to entitle him to sue the drawer. In Bayley on Bills, 286, the doctrine of notice is thus broadly laid down: "that the drawer of a bill and every indorser is, prima facie, entitled to bring an action on paying it, and therefore can insist on a want of notice."

There are some excepted cases in which notice is not necessary, as where payment is refused for want of funds. But if the plaintiffs rely on proof of the want of funds in the hands of the drawee to excuse notice, it is equally necessary that their petition should contain that averment.

We may then regard it as settled, that to enable the holder to recover against the drawer of a bill of exchange, he must aver in his petition and prove upon the trial presentation for payment and notice of dishonor, or the want of funds in the hands of the drawee, to excuse him therefrom; otherwise he must fail in his action.

It may be proper here to remark, that the right of action against the drawer accrued to the holders before the passage of the act of Congress, approved January 25, 1840, which dispenses with protest and notice.

The plaintiffs in the court below not having set forth in their petitions that notice of nonpayment had been given to the drawer, nor averred a want of funds in the hands of the drawee to excuse such notice, and the defendant having demurred to plaintiff's petition for the want of the

---

lex loci rei situs governs. A mortgage executed without the State, contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermott, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

necessary allegations, and the demurrer having been improperly over-ruled, it is considered by this court that the demurrer be sustained and the judgment of the district court annulled and reversed; and that the cases be sent back, with directions to the district court to allow the plaintiffs to amend and proceed to trial upon the merits of their cause.

<em>Reversed and remanded.</em>

## No. XIV.

### HAMILTON v. BLACK, ADMINISTRATRIX.

#### (See Note 69.)

*Appeal from Red River County.*

MORRIS, JUSTICE.—Jacob Black, who died pending this action and whose administratrix is now in court, filed his petition in the District Court of Red River County, alleging indebtedness on the part of one Hamilton to him in the sum of $3500, on a promissory note or writing obligatory bearing date the 1st day of January, 1835, and payable twelve months after date; filing his note and praying that it be made a part of the petition. His petition was filed on the 24th of March, 1840, and at the September term, 1840, process having been served, the defendant, Hamilton, appeared and filed an answer in the nature of a demurrer, or with special exceptions, in which he prayed the judgment of the court. The cause was continued by defendant, and on the 4th day of April, 1842, came on for hearing on the petition and answer. The demurrer, or exceptions, were overruled by the judge and final judgment rendered for the debt and interest. From this judgment, an appeal is prayed to this court.

The points relied on by the counsel for the appellant as grounds of error in the proceedings and judgment in the court below are:

1. That the petition is insufficient, in not specifying the term at which it was filed.

2. That the instrument in writing declared on by the plaintiff below is styled a "promissory note, or writing obligatory," when he should have declared upon the one or the other.

3. That the note or instrument in writing was not on file, as alleged; nor was a copy of it ever served upon the defendant, as a part of the plaintiff's petition.

4. That the judgment of the court on the defendant's answer should have been respondeat ouster, and not final.

The first ground of demurrer or exception was abandoned by counsel in argument and need not therefore be considered by the court.

---

**Note 56.**—Cummings v. Jones, p. 530.

　　In order to maintain motion against executor or administrator, claim must be duly authenticated, presented and rejected. Darly v. Chevalier, Dal., 555; Graham v. Vining, 1 T., 639; Tompkins v. Bennett, 3 T., 36, 49; Harrison v. Knight, 7 T., 47; Hall v. McCormick, 7 T., 269; Millican v. Millican, 13 T., 460; Thompson v. Branch, 35 T., 21; Bank v. Higgins, 72 T., 66;

It will be proper to examine the second and third grounds in connection. The object of our statutes on the subject of pleading is to simplify as much as possible that branch of the proceedings in courts which, by the ingenuity and learning of both common and civil law lawyers and judges, had become so refined in its subleties as to substitute in many instances the shadow for the substance.

Our statute (vide Texas Laws 1836, page 201, section 8) requires, at the hands of a petitioner to a court of justice, only a statement of the names of the parties plaintiff and defendant; a full and fair exposition of his cause of action, and finally the relief which he asks. Applying this statute to the case under consideration, we can not see that the plaintiff below has failed to comply with its requisitions either in spirit or in letter. The date of the "note, or writing obligatory" as it is called in the petition, the time of payment and amount due, are specially set forth, and amply sufficient to notify the defendant of what he was called on to defend; and we entertain no doubt that under the allegations there made the note or writing could have been given and would have been admitted as evidence, even without its being made an exhibit in the case and a part and portion of the petition. The exception made as to its not being on file as a part of the petition, nor served upon the defendant, is clearly matter in abatement, and should have been pleaded as such; and the statute (Texas Laws, volume 4, section 9, page 89) specially provides, that all pleas in abatement shall be under oath or affidavit, which oath or affidavit to said plea nowhere appears on the record.

The joinder in demurrer only admits these points which are properly pleadable in demurrer; and this, being matter in abatement and not of demurrer, can not therefore upon such joinder be deemed às admitted.

The note, then, seems to have been made a part of the petition. A copy of it appears in the record; the clerk below certifies that he issued a true copy of the petition to the sheriff; the sheriff returns it duly executed on the defendant. None of these facts are put in issue by plea properly substantiated, and the court is bound therefore to presume that the note was a part of the petition; and this being ascertained, there no longer exists the slightest ground for the difficulty suggested by the second exception.

As to the fourth point: It is undoubtedly true that on mere dilatory pleas the usual judgment of the court in overruling them is respondeat ouster. But the point in consideration is, whether under our law and practice the court below *had the power and right* to give final judgment on the pleadings as they *then stood?* At the first, or appearance term, after the service of the petition, the defendant filed his answer, thereby saving the necessity and superseding the right of the plaintiff to take

---

Jenkins v. Cain, 72 T., 88; Kiolbassa v. Raley, 1 T. C. A., 165; Perkins v. Traynham, 3 App. C., sec. 78; Ballard v. Murphy, 4 App. C., sec. 171; Lainer v. Taylor (T. C. A.), U. R. C., 1897. Presentation and rejection after suit is filed is not sufficient. Thompson v. Branch, 35 T., 21. And authentication,

his judgment nisi, by default, under the statute. At that term the cause was continued by defendant. We lose sight of the case for two years. In September, 1842, it was called for trial, and the judge properly decided that the answer was bad. Was the defendant not then in default? And should the plaintiff be forced to his rule to plead against him, thereby insuring the farther delay of three days, and in all probability a term, before an answer to the merits could be compelled, or final judgment by default, on failure therein, be taken? We think not; but consider that he was, under the statute, *in default* (volume 4, page 88), and that the judge by the law had the right and power to give final judgment in the case. It does not appear from the record that the defendant ever asked leave of the court to plead over to the merits, or that that leave was refused by the court. He seems to have intrenched himself behind legal objections which the court below and the court here deem untenable, and he must abide the result.

It is therefore considered by the court that there was no error in the judgment of the district court, and that the same be in all things affirmed.

*Affirmed.*

## No. XV.

### ELI LANGFORD v. THE REPUBLIC.

#### (See Note 70.)

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The appellant brought his action to obtain a certificate for a league and labor of land; and in the special verdict of the jury it was found that he had obtained a certificate for a league and labor from the proper board of commissioners, and that the same had been rejected by the Investigating Board. That the said Langford had lived on the Attoyac in the now county of Nacogdoches in the years 1826 and 1827, and there had a family (a wife and children), together with some five or six negroes.

It was also proven that the said Langford, in the year 1833, was living in the now county of Red River, where he has ever since resided, but not with the family he had on the Attoyac. He lived with another woman named Eleanor Langford, who has obtained in her own name from the proper authorities a certificate for a league and labor of land; which said woman the said Langford disclaimed as his wife. It was also proven that Mary Langford—the same name of the wife with whom the said Langford lived in 1826 or 1827, under the colonization law of the 24th of March, 1825—obtained from the proper authorities a

presentation, rejection and date of same should be specifically alleged and proved. Darly v. Chevalier, Dal., 555; Graham v. Vining, 1 T., 639; Graham v. Vining, 1 T., 669; Hall v. McCormick, 7 T., 269, 278; Deen v. Duffield, 8 T., 235; Fulton v. Black, 21 T., 424; Wiley v. Pinson, 23 T., 486; Walters v. Prestidge, 30 T., 65; Swift v. Trotti, 52 T., 498; Tolbert v. McBride, 75 T.,

grant for one league of land, and that the said grant was obtained by the said Mary E. Langford in the now county of Nacogdoches, where the said E. Langford lived in 1826 and 1827.

The plaintiff also offered in court a conveyance marked (A) and filed of record in the case; by which he released and conveyed to the government any and all grant or grants of land issued to him or his wife, Mary Langford, under the colonization laws of the State of Coahuila and Texas. These facts being submitted to the court, judgment was rendered in favor of the Republic.

In whatever light the facts of this case are considered, we discover no error in the judgment of the court below. The plaintiff has effectually stripped himself of the qualifications essential to the success of his claim. His pretensions as the head of Mary Langford's family are unsubstantial, as that family has already received the quantum of land to which it was entitled under the colonization laws, and can not now be foisted into the plaintiff's service to enable him to substract a further portion of the public domain.

The attempt of the plaintiff to reconvey all lands received by him or his wife from the government imparts no additional merit to his present application. His wife had no knowledge of the act, and so far as it would operate fraudulently to her prejudice, it would doubtless be regarded nugatory. Had he been entitled by law to any interest in the lands granted to Mary Langford,—which under the circumstances might be doubted,—his release thereof to the government would have been a gratuitous exercise of liberality, without merit and certainly without a corresponding reward. The law makes no provision for releases of this description; and the judicial tribunals of the country are not authorized to award compensation for charities, and forcibly, for illegal purposes, obtruded upon the government.

If the instrument can have any legal operation, it can affect only the interest which the plaintiff may claim, or pretend to claim, in the lands granted to his wife, as the head of the family. If his doubtful right in the said lands has been diminished, he has been estopped by his own act from urging the same. His case presents no such circumstances as to entitle him either to sympathy or relief. The questions in relation to the relative rights of the plaintiff and his wife can not be decided until they are properly brought before the court, and they will be passed without further remark.

The plaintiff can not claim as a single man, because though degraded from the dignity and deprived of the rights of the head of the family by the former authorities, he has not been divorced from the matrimonial bonds.

95; Rogers v. Harrison, 1 App. C., sec. 495. Indorsement on claim rejecting it, is prima facie proof of rejection, in absence of plea of non est factum. Tolbert v. McBride, 75 T., 95. These rules are as applicable to claims secured by liens as to unsecured claims. Graham v. Vining, 1 T., 639; Graham v. Vining, 2 T., 433; Danzey v. Swinney, 7 T., 617; Conkrite v. Hart, 10 T., 140, 141; Crossby v. McWillis, 11 T., 94; Duty v. Graham, 12 T., 427, 437; Robert-

No argument arises in favor of the plaintiff from his cohabitation with a woman whom he repudiates as a wife; and even if she were his spouse, his application could not succeed, as she has already obtained a league of land from the government.

We are of opinion, therefore, that the judgment of the court should be affirmed, and it is hereby ordered, adjudged and decreed accordingly, and that the appellant pay all costs of suit.

*Affirmed.*

## No. XVI.

## L. W. TINNIN v. JAMES WEATHERFORD.

*Appeal from Lamar County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted in the District Court of Lamar County by the appellee against the appellant upon a promissory note payable to James Weatherford or order, one day after date, for the sum of $318. Said note was assigned by Weatherford to Wm. Lloyd and by him to Erwin Matthews.

The answer of the defendant alleges, "that the legal as well as equitable interest in said note is not and was not, at the time of the commencement of this suit, in the plaintiff, Weatherword; but it is in one of the indorsees thereof, or some person holding under them, or one of them;" and for further answer sets up "a total failure of consideration."

It appears from the statement of facts that the counsel of the plaintiff below in open court, before the trial of the cause, erased the indorsements on the back of the note sued upon, against the expressed protestation of the defendant's attorney; and that the court, notwithstanding the objection, permitted the erasure.

As this action was instituted since the introduction of the common law, and a part of the answer seeks to *abate* the action, we must be governed by the rules of pleading known to that system and the acts of Congress of force in this Republic. The court here deems it unnecessary to examine into any other cause of error assigned by the appellant than the right of the appellee to prosecute this suit in his own name and the issue made thereupon by the pleadings. The case is, per force, disposed of upon that single point, being the first presented for the consideration of this court.

The denial of the right of the plaintiff to sue in his own name should have been taken advantage of by plea in abatement, *supported by oath or affirmation;* for the reason that this plea does not put in issue the merits of the cause, but tends only to produce delay.

son v. Paul, 16 T., 472, 475; Cunningham v. Taylor, 20 T., 126; Converse v. Sorley, 39 T., 515; Buchanan v. Wagnon, 62 T., 375; Wilson v. Harris, 91 T., 427. It is not necessary to verify and present claim to independent executor before bringing suit. Pleasants v. Davidson, 34 T., 459; Black v. Rockmore, 50 T., 88, 99; Smyth v. Caswell, 65 T., 379; Ellis v. Mabry, 25 T. C. A., 164.

TINNIN v. WEATHERFORD.                591

The doctrine is clearly established in 1 Chitty, 481: "Whenever the subject matter of the plea or defense is that the plaintiff can not maintain *any* suit, *at any time,* in respect of the supposed cause of action, such matter must be pleaded in bar; but that which merely defeats the present proceeding, and does not show that the plaintiff is *forever* concluded, should be pleaded in abatement." "A leading distinction between a plea in *abatement* and a plea in *bar* is, that the former must not only point out the plaintiff's error, but must show him how it may be corrected, so as to avoid the same mistake in another suit for the same cause of action." 1 Chitty, 481. "A plea in bar, unlike a plea in abatement, offers matter which is a conclusive answer, or defense to the action upon the merits." 1 Chitty, 556.

The distinctions between pleas in abatement and those in bar are somewhat subtle and refined in their practical application, though in the case before us the distinction seems to be clear enough to have enabled the defendant to file the proper plea, which would put in issue the disability of the plaintiff to sue. That may be done by plea in abatement, under oath or affirmation, as we have before mentioned. How does the case at bar agree with the principle here defined? Was the plea of the defendant merely intended to delay the plaintiff; or would the appellee here be *forever precluded* (as in pleas of bar) by the decision of the court below that he had no right to maintain his present action? Clearly not. Without undertaking to determine whether it was lawful in the plaintiff or his attorney to erase the indorsements in order to maintain the present action in his own name (which is beside the question now under consideration), it may readily be perceived that, had the defendant's plea in abatement been duly supported by oath or affirmation and judgment rendered for him by the court, the plaintiff could have procured a reassignment of the note to him, and have renewed the suit in his own name. Not so if the plea was one in bar.

It may be proper to examine how far the pleadings before us furnish intrinsic evidence that the plea to the disability of the plaintiff here set up was intended to produce delay, and thus to bring it within the definition of a plea in abatement, as laid down by the authorities.

The answer to the merits sets forth a failure of consideration of the note upon which suit is instituted. The original obligee of the note is the plaintiff in the present action, and the most proper person against whom to have established such a defense, it at all meritorious. The door was thus thrown open for the full investigation of the case, and we must infer that the defendant failed to establish his defense upon

---

If executor allows claim and rejects lien, suit can not be maintained to foreclose lien. Mortgage Co. v. Jackman, 77 T., 622; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368. In such cases the lien must be enforced through probate court and not by an independent action in another court, except where claimant has some legal or equitable right connected with claim, which can not be adjudicated in probate court. Cunningham v. Taylor, 20 T., 126; Cannon v. McDaniel, 46 T., 303; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368; Perkins v. Traynham, 3 App. C., sec. 78. When both claim and lien on land are rejected, only remedy is in district court. Leslie v. Elliott, 26 T. C. A., 578. Presentation to and rejection by

the merits, as the jury found for the plaintiff. How, then, is the defendant to be benefited by showing that the legal or equitable interest is in a third party?

Upon the answer to the plaintiff's petition by the defendant, that the consideration of the note had failed, the plaintiff would not be permitted to rejoin that the real interest was in another, and that he was merely the nominal plaintiff. The defense of the defendant, if just, could avail against the present plaintiff, as well as against the last indorsee.

As we have settled that so much of the answer as relates to the disability of the plaintiff to sue in his own name is a plea in abatement, this case is disposed of by the ninth section of the "act to regulate the proceedings in civil suits," approved February 5, 1840, which enacts, that "no plea in abatement shall be admitted, or received, unless the party offering the same shall prove the truth thereof by oath or affirmation, as the case may be." The plea offered by the defendant was neither sworn to nor affirmed, as the statute requires. It is therefore considered that the judgment of the court below be in all things affirmed.

*Affirmed.*

Judges Morris and Ochiltree say: "We concur in the result of this opinion."

## No. XVII.

### THOMAS C. DOSS v. JOHN R. CRADOCK.

*Appeal from Lamar County.*

OCHILTREE, JUSTICE.—This case comes up from the District Court of Lamar County, unaccompanied with any statement of facts or bill of exceptions. On an examination of the record we can discover no error whatsoever in the judgment of the court below. We therefore are of opinion that the same be in all things affirmed.

*Affirmed.*

## No. XVIII.

### P. W. HERBERT v. THOMAS A. MOORE.

*Appeal from Travis County.*

JONES (WILLIAM J.), JUSTICE.—This case comes up upon a judgment rendered pro forma for the appellee in the court below.

The facts are in substance as follows: That on the night of the 27th of May, 1842, certain horses and mules were stolen from the plantation

---

one of several executors is sufficient to authorize suit. Deen v. Duffield, 8 T., 235. Failure to present claim within one year from appointment of administrator does not defeat action to foreclose lien. Phillips v. Mortgage

and possession of the appellant, in the county of Bastrop; and among them a mule, which is the subject of controversy. On the 30th of May of the same year, two days therafter, the mule was found in the possession of some Indians by the appellee and others (on a hunting excursion), about nine miles from the settlement on Brushy and thirty miles from Austin. They were all retaken after a skirmish, in which the appellee lost his horse.

It was admitted that the property belonged to the appellant at the time it was stolen, and that he demanded it of the appellee soon after its recapture from the Indians; but the restoration was refused upon the alleged ground that the taking and possession by the Indians, for more than *twenty-four hours,* divested the right and ownership of the appellant, and that the recapture vested the property of the mule in the recaptors, of whom the appellee was one.

The right preferred by the appellee to the property in question was based upon that principle of the law of nations known as the rule of post-liminy; which is defined to be the law under which property, if taken by an enemy in time of war, is restored to its former state upon coming again under the power of the nation to which it formerly belonged. This principle was recognized among civilized nations as essentially contributing to mitigate the calamities of war.

It appears, however, that movable property was not entitled by the strict rules of international law to the full benefit of post-liminy, unless retaken from the enemy soon after recapture; and the time necessary to vest an absolute title in the captors and to divest that of the original owner has been fixed at twenty-four hours. In some governments, the municipal laws have relaxed the rigor of this rule of limitation against the restoration of the property of the original owner, in case of recapture by their own citizens or subjects. There was no municipal regulation with us which applied in this case.

We do not consider it necessary to do more than state the principle here set up by the appellee, as in the very threshold a grave and important question is presented to us. We are first called upon to decide whether our courts of justice will apply the doctrines of international law to cases growing out of the predatory disturbances and desultory inroads made upon our frontier inhabitants by the savage and wandering tribes of Indians within the limits of the Republic? If they can not be so applied, a further inquiry into the laws of post-liminy will be unnecessary. It is barely questionable (if they can be so applied)

---

Co., 90 T., 195. When a lien claim is rejected, claimant may have judgment in district court for establishment of lien as well as debt. Cunningham v. Taylor, 20 T., 126; Perkins v. Sterns, 25 T., 561; George v. Ryon, 94 T., 317 (reversing George v. Ryon (T. C. A.), U. R. C., 1900); Jenkins v. Cain (T. Sup.), U. R. C., 1889. Presenting claim without presenting lien is sufficient presentation, though the better practice is to present both. Danzey v. Swinney, 7 T., 617; Cundiff v. Simpson, 32 T., 144; Cannon v. McDaniel, 46 T., 303; Mortgage Co. v. Jackman, 77 T., 622. Presenting claim alone is not waiver of lien. Ball v. Hill, 48 T., 634; Kempner v. Comer, 73 T., 196; Sutherland v. Elmendorf, 24 T. C. A., 137. In a contest between lien creditors, appellant can not on appeal object for first time that appellee's claim

whether, from the state of facts presented by the record in this case, the appellee could sustain his claim to the property in question. The rights of post-liminy do not attach in time of peace; and it is not alleged or shown that hostilities with these Indians were actually and continuously existing. Occasional border skirmishes can not be regarded as a regularly conducted war.

But if the present action could be safely disposed of on the ground just presented, it is still desirable that this question should be examined and settled upon the broad principle whether, if a state of war really existed, the same conventional rules of international justice which apply to civilized nations shall be extended by our courts of judicature to wandering savages, who have no fixed inhabitancy nor defined territorial limits. It is not controverted in the books that the law of post-liminy can only be applied to cases growing out of wars between *nations*. From the same authority, we are justified in saying that no community can be termed a nation which is not able to enforce its sovereign rights within some fixed territory—which is not independent of all other nations—which can not lay claim to nor exercise equal political rights with its neighbors or allies—and which does not profess to conform to all the obligations, universal in their sanction, imposed by the law of nations.

We will now examine how far these various attributes of sovereignty belong to the tribes of Indians in this Republic, and more especially those from whom the property in dispute was recaptured. They do not claim any territory as their fixed abode, nor attempt to enforce a sovereign authority over it. With one exception, assumed by some to have been made in favor of the Cherokees and their associates by the Mexican government, we know of no lands to which the Indians ever set up an absolute, indefeasible title within the limits of the Republic, as defined by the Act of December 19, 1836. No such title is claimed for the Indian tribes from whom the recapture of the property in dispute was made.

No territorial limits were ever assigned by the Mexican government to the various tribes of Indians in Texas; and if we look to the treaty of 1832, between Mexico and the United States, we will find that the former Republic then designated them as "Indian tribes," and not "Indian nations." In conformity with the views of the parent government, the Congress of Coahuila and Texas, in the ninteenth article of the colonization laws of 1825, have enacted, "that the Indians of all the *wandering* tribes within the limits of the State, who may wish to *establish* themselves in any of the settlements, after declaring themselves in

---

was not duly authenticated and presented, where administrator is not party to appeal. Watt v. White, 46 T., 338. Holder of vendor's lien note is not required to present claim to administrator of deceased indorser before bringing suit against maker to foreclose lien. Watt v. White, 46 T., 330.

**Note 57.**—Edwards v. Republic of Texas, p. 535.

An appeal does not lie in a criminal case, unless the appellant is in custody. Lowe v. State, 15 T., 141; Pate v. State, 21 T. App. 191.

favor of the institutions and religion of the government, shall be admitted as *settlers.*" If we look further on, we will find that by our Constitution and laws the Indians have been reduced to a level with free negroes and mulattoes.

The Indian tribes of Texas can not be regarded as independent of other nations, since they are under the control of this government; and their territorial limits may be extended or reduced as to the Congress may seem best. Nor has their independence or sovereignty been admitted by our sister Republic of the North. All the States of the Union where Indians were residing have held them in strict obedience to the laws, so far as public policy required. Chief Justice Marshall, in delivering his opinion in the Supreme Court of the United States on the final decision of the controversy between the Cherokee Nation and' the State of Georgia, places them, with .reference to the general government, in the same relation as that of the ward to his guardian; and after reciting the fact that those Indians occupied a territory to which the government of the United States asserted a title, decided, that "whilst they so resided within the limits of that government, they were in a state of *pupilage.*" And in continuation, "that they looked to the government for protection, and relied upon its kindness and power." The Indian tribes on our frontier stand necessarily in the same relation to this government; and although there may be occasional resistance, they are still subject to be controlled by the government. Their domestic dependence is no more discarded by a revolt against the authorities of the nation than the rights of the master are weakened or impaired by the open disobedience of the slave. The shackles of the one are not removed by opposition to the master, nor are the rights of the other enlarged by resistance to the government. They are still in a state of pupilage; and however fierce and sanguinary may be the opposition of the "wards," they must ultimately be brought, "to submit to the power and rely upon the kindness" of the "guardian."

But were the entire independence of the Indian tribes of Texas established beyond dispute, the conventional rules of the laws of nations could not still be applied to them. They are beyond the pale of civilization and can not be controlled in their conduct by conventional rules. As, for example, we find in Grotius (and copied by other writers upon this subject) that upon a recapture from pirates the property is restored to the original owner and does not, like a capture from an enemy in solemn war, change the title or divest the first proprietor of his right; nor does it require the application of the doctrine of post-liminy to

---

**Note 58.**—Whiting v. Briscoe and Harris, p. 540.

It is the cherished policy of the law of our State that its inhabitants only be sued in the county of their domicile, unless otherwise provided by statute; and suits brought in any other place may be met and resisted by plea in abatement. Rev. Stats. 1895, art. 1194; Chevallier v. Williams, 2 T.. 239; Campbell v. Wilson, 6 T., 379; Henderson v. Kissam, 8 T., 46; Pool v. Pickett, 8 T., 122; Kinney v. McCleod, 9 T., 78; Finch v. Edmondson, 9 T., 504; Primrose v. Roden, 14 T., 1, 3; Blucher v. Milsted, 31 T., 621; Freeman v. Kuechler, 45 T., 592; Masterson v. Cundiff, 58 T., 472; Carro v. Carro, 60 T., 395;

restore it. Shall we apply these rules to pirates on land, or Indian robbers? Or will it be contended that the Indians rank higher than the pirates of the sea, or that they have ever conformed to those obligations of universal sanction imposed by the law of nations? Pirates subsist by robbery. And how do these Indian tribes, the Wacos and Comanches, live? And in what manner do they redress their supposed grievances? They are equally robbers with the pirates; and to avenge their imaginary wrongs, they have uniformly had recourse to rapine and bloodshed. Shall we then dignify them with the proud title of nationality, with whom we would be willing, if practicable, to cultivate the same relations of amity and intercourse as with England, France or the United States? Let us examine for one moment how mischievous this rule would be in its practical operation.

The rule of decision once established that twenty-four hours' possession by the robber would vest such a title in the recaptor that the original owner could not claim his property, and it would be to him a perpetual bar, as a recapture in that time, without miraculous intervention, could rarely ever take place; and all inducement for the despoiled owner to join in pursuit of the plunderers would be thus effectually withdrawn.

We can not acknowledge that the law of post-liminy can be as readily applied to Indians as to civilized governments without enforcing against our border population a most dangerous and unjust policy. These savages are regular depredators upon their property. The history of the bloody forays between them and our own citizens is recent and fresh in every mind, and the fact is referred to here simply to illustrate the danger of the application of these conventional rules of nations to property taken in the hour of midnight, by savage plunderers having no territorial limits, claiming no right of sovereignty over the soil, and living without any known form of government; whilst they set at defiance all the obligations held sacred and inviolable by civilized nations.

If recaptors of property from the grasp of the Indian robber were entitled to the full benefit of post-liminy, with its rigid and unqualified rule of limitation against the rights of the original owner, we should indirectly hold out inducements to the commission of the offenses against which the laws should provide a penalty. The depraved and discontented of all classes and nations would thus have a premium held out to them to encourage Indian robberies. If the property be stolen and removed one day's journey beyond the frontier, the ally of the Indians may there meet them, take possession of his share of the spoils,

Thomson v. Locke, 66 T., 383; Farris v. Seisfield, 1 App. C., sec. 351; Strohl v. Pinkerton, 1 App. C., sec. 470; Walthew v. Milby, 3 App. C., sec. 119; Fillman v. Hood, 3 App. C., sec. 191; Chamberlain v. Fox (T. C. A.), U. R. C., 1896. Objection to venue may be by special exception when it appears from the face of the petition that suit is brought in wrong county. Bigham v. Talbot, 51 T., 450; Masterson v. Cundiff, 58 T., 472; Carro v. Carro, 60 T., 395; De la Vega v. League, 64 T., 205; Watson v. Baker, 67 T., 48; Johnson v. Price, 2 App. C., sec. 756; Willis v. White (T. C. A.), U. R. C., 1895; K. C.

and claim to be a recaptor, entitled to the benefit of the law of post-liminy. What evidence could be furnished to show the conspiracy between the plunderers and the recaptor? In this way the courts of justice might often be invoked, ignorant of the fraud, to legalize the most daring and systematic game of plunder.

We can not therefore regard the present case in any other light than a robbery coming strictly within the rules of the municipal law, and which entitles the owner of stolen property, upon the establishment of his title according to the mode there pointed out, to be restored to his original rights.

We are of opinion that it was error in the district court to have entered up judgment for the defendant, and that the same should be reversed with costs.

*Reversed.*

Judge Morris says: "I concur in the result."

## No. XIX.

### A. B. SHELBY v. THOMAS JOHNSON.

#### (See Note 71.)

*Appeal from arbitration of the Hon. A. Hutchinson, Judge of the Fourth Judicial District.*

HEMPHILL, CHIEF JUSTICE.—A controversy having arisen between the parties in this cause in relation to the right to hold and exercise the office of judge of the First Judicial District, they mutually, and in writing, agreed to submit their conflicting pretensions to the arbitrament and decision of the Hon. A. Hutchinson, judge of the Fourth Judicial District, subject, however, to appeal to the Supreme Court of the Republic for final adjudication.

At the trial in the court below the following facts were admitted, viz: That presently after the organization of the Republic by a joint vote of both houses of Congress, Shelby Cozine was elected judge of the First Judicial District, and was qualified as such for the term of four years, expiring in November or December, 1840. That prior to November 29, 1839, the said Cozine died; and that on that day the claimant, Shelby, was, by a joint resolution preceding and a joint vote following, of both houses of Congress, elected judge of that district to fill the unexpired term of the said Cozine; was commissioned on the same day to fill that unexpired term; that he presently afterwards was qualified and proceeded to discharge and had ever since (except as interrupted by the claim of the other claimant) discharged the duties and functions of the office; and claimed to hold and exercise the said fran-

P. & G. Ry. Co. v. Bermea Land and Lumber Co. (T. C. A.), U. R. C., 1899. The word "domicile," in statutes regulating venue, means residence. Brown

chise for the full term of four years from and after the said 29th of No-
vember, 1839. That in the month of January, 1841, the claimant, by a
like resolution and vote of both houses of Congress, was elected to hold
the same office for four years; that he was presently afterwards commis-
sioned and qualified, and attempted to exert the functions and .duties of
the said office and still claimed so to do, but had been and was still op-
posed by the claim of the said Shelby. The controversy was decided at
the spring term, 1841, of the District Court for Gonzales County in
favor of the claim of the said Thomas Johnson, and the appellant was
allowed his appeal without bond or citation.

The claimant, Shelby, having been elected and commissioned to hold
his office for about one year, it is urged that as well by the conditions
attached to the action of the electoral body as by his own conduct, he
was precluded from holding the judicial franchise for a more extended
period.

As the tenure of this office is prescribed by the Constitution, that
instrument must furnish the rules by which the action, both of the
appellant and of the legislative authority, must be regulated. On its
broad foundation rest alike the rights of individuals and the powers
of government itself and of all its departments. Its authority is para-
mount, and the acts of individuals and of the government are equally
subjected to its control. Its maxims or principles can not be violated
without endangering the safety of our institutions; nor can any one of
the separate bodies, in which power is deposited by this organic law,
encroach on the rights, franchises or privileges of another without haz-
arding the existence of the distinctive features and most valued char-
acteristics of our republican form of government. This tribunal, in
its proper sphere, is vested with the extraordinary power of testing,
not only the acts of individuals but of the highest authorities by this
unchanging criterion; and where the default is obvious, we can make
no discrimination in our judgment between the aberrations of private
persons and of the most powerful branches of the government.

Let us proceed, then, to examine the action of Congress in the mat-
ter now before us, by the provisions of this fundamental rule. In
article 4, section 1, it is laid down, that "the judges of the Supreme
and interior courts shall hold their office *for four years;* be eligible to
re-election," etc. This is the only reference which in express terms is
made to the tenure of the judicial office, nor are there other expres-
sions or terms used which by implication or construction can modify
the plain and certain intendment of the foregoing declaration. The
text of the Constitution on this subject is so clear and perspicuous
that it can not be elucidated by argument. Would any one contend

v. Boulden, 18 T., 431; O'Connor v. Cook (T. C. A.), U. R. C., 1894; T. & P.
Ry. Co. v. Edmisson (T. C. A.), U. R. C., 1899. Defendant's residence at the
time suit is filed, determines jurisdiction and venue. Whiting v. Briscoe,
Dal., 540; Walker v. Walker, 22 T., 331; Faires v. Young, 69 T., 482; Hopson
v. Caswell, 13 T. C. A., 492, 494; Kuteman v. Page, 3 App. C., sec. 165. Car-
rying on a business does not fix the owner's domicile, and where defendant

that Congress could extend the tenure of the office beyond the period of four years. And do not the terms of the above limitation of power, equally by the simplest rules of construction, prohibit its abridgment to a more limited term? The inhibition could not have been, in our opinion, more strong, if the Congress had in express terms been forbidden to appoint the judges for a less time than four years. The tenure of the office being thus precisely limited and defined by the Constitution, the legislative body, deriving its authority from the same source, could not in the appointment of incumbents attach other and variant terms and conditions by which to affect the same.

If it be within the competency of Congress to modify the terms on which the franchise should be holden, their authority can not result from any constitutional grant, but from some imaginary power of discretion; which, as it is restrained by no known limits, easily leads to the wildest excesses, and might subject the judicial department to the caprice of perhaps a reckless majority. When the exercise of power is limited only by the discretion of the incumbent, it becomes arbitrary, and the most valued rights are no longer secure. If the will of majorities be unrestricted, they could not be prevented, when maddened by passion or perhaps worse motives (and the records of history furnish many similar examples of misrule), from declaring vacancies at any time in the offices of other departments of the government, and filling them for a year, a few months, or days, with the apt instruments and supporters of usurpation and tyranny. Our safety depends upon an observance of the Constitution and a compliance with the letter and spirit of its requisitions.

Nor is any argument deducible from the fact that Judge Cozine departed this life before the expiration of four years from the date of his election. When the incumbent is removed by death, the office becomes vacant and returns to the appointing power. It can not either in reason or in the nature of things be connected with or affected by the deceased unless the creative law carries out a definite and precise period for the beginning and termination of the term of the said office, whether the same has been holden by one or more incumbents in the intervening space. There is nothing in the terms used to justify the construction that the tenure of the judicial office was such a carried-out, fixed term; or that on the death or removal of an incumbent the next appointee should occupy his place and complete the portion of time for which he could have enjoyed the office, had his death or removal not occurred.

---

changes his residence and continues his business suit should be brought in the county where his family resides. Tucker v. Anderson, 27 T., 276; Blucher v. Milsted, 31 T., 621; Strohl v. Pinkerton, 1 App. C., sec. 470. Where a person has resided for a considerable time in one county, it is his residence as to venue until a complete change is made by him. If he is in the act of moving from one county to another or has made the place of his residence uncertain by his acts, he may be sued in either county. Brown v. Boulden, 18 T., 431; Wilson v. Bridgeman, 24 T., 615; Tucker v. Anderson, 27 T., 276; Faires v. Young, 69 T., 482; Blum v. Younger, 2 U. C., 302. As a general rule suits in a justice court should be brought in the precinct where defendant resides, and plaintiff should show that the case is within one of the excep-

The language of the instrument forbids such a construction. It is\ equally opposed by public policy. The advantages of an independent judiciary are acknowledged and attempted to be secured by all wise communities. These, to some limited extent, are obtained by conferring the office for a period of four years. Where the appointment endures but for a year, a few months, or even days, the firmness of the judicial magistrate receives no support, under such circumstances, from the tenure of his office; but on the contrary, it tends to enfeeble the inherent independence of his character.

The declarations of the Constitution being explicit on the subject, and the same not being repugnant to any other provisions of that instrument, nor changed nor modified by any justifiable rules of implication or con- struction, the conclusion is inevitable that the incumbent of the office of district judge is entitled to hold and exercise the same for the full period of four years.

Nor is the argument valid that the claimant, Shelby, having accepted the office under the circumstances of his election, was bound to vacate the same at the expiration of the time pointed out in the proceedings of Congress. The length of time for which the office should be holden depended neither upon the Congress nor the claimant. It was prescribed and guaranteed by the Constitution, and was subject to no modification from the mistakes or misapprehensions of the appointing power or of the individual applicant.

When the election is finished, the will and power of the Legislature cease; the incumbent becomes a member of a co-ordinate and independent branch of the government; his office is based upon the Constitution, and is protected by all the immunities thrown around it by that instru- ment. The organic law furnishes the standard for the term of his office, and by that alone can it be measured or controlled.

Nor can it be urged that the appointment of the claimant having been made for a less term than four years, the election was illegal and invalid, and the appointment itself null and void. The action of Con- gress in this instance may be regarded in two points of view: 1. As to the manner of filling the office. This was by joint ballot of both houses of Congress, and was therefore constitutional. 2. As to the terms, on which the office should be holden. These they had no war- rant to prescribe, except as authorized by the Constitution; and their action in that particular was null, void and inoperative.

The invalidity of one portion of a statute or act of Congress does not, however, destroy the whole. The illegality of the conditions affixed to

tions when he brings suit elsewhere. Phillio v. Blythe, 18 T., 124; Cowan v. Nixon, 28 T., 230. To entitle plaintiff to maintain a suit in a county or pre- cinct other than where defendant resides, he should bring his case clearly within one of the exceptions. In such cases, it seems, the court has jurisdic- tion unless defendant claims his privilege. Masterson v. Ashcom, 54 T., 324; Carro v. Carro, 60 T., 395; Watson v. Baker, 67 T., 48; Lindheim v. Muschamp, 72 T., 33; Hilliard v. Wilson, 76 T., 180. Where plaintiff alleges in his petition that defendant resides in another county, he should also allege facts showing that the suit is brought in the proper county. Failure to do so may be cured

this office do not affect the act of appointment; but the same being legal, the constitutional incidents of the franchise at once arise, and the appointee was entitled to their enjoyment.

Having considered the law and facts of this controversy as submitted to us on the record, we are of opinion that the court below erred; that the claimant, Shelby, was entitled to hold his office for the full period of four years from the date of his election; and it is therefore ordered and adjudged that the judgment of the court below be reversed.

*Reversed.*

## No. XX.

### JOHN S. SYDNOR v. THOMAS J. CHAMBERS.

(See Note 72.)

*Appeal from Robertson County.*

MORRIS, JUSTICE.—John S. Sydnor appeared in person before Richard Morris, judge of the First Judicial District, and being duly sworn, made the following affidavit: "That Thomas Jefferson Chambers is justly indebted to him in the sum of $13,332.32; that said Chambers resides beyond the jurisdiction of the court, so that the ordinary process of law can not be served on him, and that an attachment is not sued out for the purpose of vexing or harassing the said Chambers, or other improper motives;" which affidavit was signed by said John S. Sydnor and subscribed by the judge, as having been sworn to before him on the 17th of July, A. D. 1842.

On the 16th of August this affidavit, with a petition and bond, were filed in the clerk's office of the county of Robertson, and on the same day the clerk issued a writ of attachment, in the usual form thereon, which writ was returned by the sheriff, "executed on certain lands of the defendant in said county."

At the term of the district court held for the county aforesaid, on the 24th of April, 1843, and on the 26th day of said month, the plaintiff's attorney moved for a judgment by default against the defendant for want of a plea. The defendant then came by counsel, and moved to quash the plaintiff's attachment, on the following grounds:

1. Because the affidavit was made before the judge of the First Judicial District, on the 17th of July, 1842.

2. The writ was issued and the bond taken before the clerk of the Third Judicial District, on the 16th of August, of the same year.

by amendment. Wilson v. Adams, 15 T., 323; Evans v. Mills, 16 T., 196. The right to be sued in the proper county is a personal privilege and may be waived either by an affirmative act or by failure to claim the privilege at the proper time or in the proper manner. Pool v. Pickett, 8 T., 122; Ryan v. Jackson, 11 T., 391; Morris v. Runnels, 12 T., 175; Gildart v. Grumbles, 22 T., 15; Hays v. Stone, 36 T., 181; Hutchins v. Chapman, 37 T., 612, 614; Beazley v. Denson, 40 T., 416; H. & T. Ry. Co. v. Oram, 49 T., 341, 344; Lewis v. Davidson, 51 T., 251; Masterson v. Ashcom, 54 T., 324; Masterson v. Cundiff, 58 T., 472; De la Vega v. League, 64 T., 205; Kendall v. Hackworth, 66 T.,

3.    That the attachment was not issued by the officer to whom the application was made.

4.    The attachment was not sued out and signed by the proper officer, nor the papers returned in the manner prescribed by law.

5.    The proceedings were irregular, illegal and informal, and there was no proper affidavit made.

6.    The writ was not signed by the judge before whom the affidavit was made, nor was any affidavit made before the officer who issued the writ and took the bond.

The motion was overruled by the judge, on the ground that the objections there taken could only be raised by plea in abatement; which opinion of the court was excepted to by defendant.  The defendant then filed a plea in abatement, setting forth that the writ of attachment, as well as the affidavit and bond, were void and ought to be quashed, for the same reasons substantially as were stated in the motion.  To this plea a demurrer was filed by the plaintiff, which demurrer was overruled by the court and the plea sustained.  Whereupon the plaintiff asked leave to amend his affidavit, which was granted by the court and accordingly done.  The defendant asked leave to plead to the merits, which was refused by the court, on the ground that the statute required that he should replevy the property before pleading, which he had failed to do; to all of which acts the defendant excepted.  A jury was then impaneled, which found a verdict for the plaintiff for the amount claimed by him, with interest by way of damages.

A writ of error was subsequently sued out to this court; and it now stands before us for a revision.

The causes assigned as error are as follows:

1.    Because there was no affidavit setting forth and averring the fact, relied on as the ground of the attachment, as existing co-ordinately with the emanation of the writ—the fact sworn to being referred to a date nearly a month previous.

2.    The affidavit does not aver that by reason of the alleged non-residence the plaintiff was in danger of losing his debt.

3.    The proceedings did not all originate before the same officer, but emanated from different officers of different judicial districts.

4.    The want of a proper affidavit could not be supplied by amendment, at the time of the trial of the cause.

5.    The proceedings of the court below ought to have been quashed upon motion, and under any aspect of the case, the judgment of the court below ought to have been to quash the attachment, whether on the motion or the plea.  And the court erred in allowing the amended affidavit to be filed.

---

499; State v. Snyder, 66 T., 687; Watson v. Baker, 67 T., 48; Russell v. T. & P. Ry. Co., 68 T., 646; Bonner v. Hearne, 75 T., 242; Foster v. G. C. & S. F. Ry. Co., 91 T., 631; Aldridge v. Webb, 92 T., 122; Swearingen v. Wilson, T. C. A., 157; Equitable Mort. Co. v. Weddington, 2 T. C. A., 373; Fairbanks v. Blum, 2 T. C. A., 479; Kemp v. Whorton Co. Bank, 4 T. C. A., 648; Marshall v. Spillane, 7 T. C. A., 532; Machine Co. v. Edwards, 9 T. C. A., 537; Meade v. Jones, 13 T. C. A., 320; H. E. & W. T. Ry. Co. v. Granberry, 16 T. C. A.,

6. The court below ought to have allowed the defendant to plead to the merits, without replevying the property.

7. The judgment of the court below was for more than the plaintiff alleged to be due, and for interest not declared for.

8. The security on the plaintiff's attachment bond was his own counsel.

9. The appropriate remedy is by motion to quash, when the proceedings are absolutely void for the want of legal requisites; and the remedy by plea in abatement is merely correlative.

We do not propose to discuss and decide all the various points which have been raised by the ingenuity of counsel in this case; but shall confine ourselves to those which are conclusive in our minds, and leave for future adjudication points which may admit of doubt but are not essential to the disposition of this cause.

Changing somewhat the order of errors as assigned by counsel, we shall first consider those grounds which are suggested as error, subsequent to the default taken by the plaintiff below, as set forth in the fifth and sixth assignments of error.

We think that there was error in the court below, in the refusal to allow the defendant to plead to the merits, after the amendment made by plaintiff to his affidavit.

The record shows that the defendant asked leave to plead to the merits after the amended affidavit was filed, which was refused by the judge, on the ground that he had not filed his replevy bond as required by the eleventh section of the statute of attachments. That section prescribes: "That any person against whose estate, an attachment has issued, etc., may at any time before final judgment entered, or a writ of inquiry executed, upon giving special bail in double the amount of the debt, replevy the estate so attached and plead to the issue, so that the plaintiff is not thereby delayed of his trial, provided that the defendant shall not be required to give special bail before he is admitted to *appear* and *plead.*"

We will premise any remarks upon this section by saying, that so far as defendants are concerned the rigor of the rules of construction usually applied to attachments does not apply. It is to the plaintiff, who seeks to take advantage of the remedy, that those rules are applicable, and not to him who is brought unwillingly within their provisions. Although this section be very awkward in its terms, still I do not see much difficulty as to its construction. We can not reasonably understand that Congress intended to deprive a debtor of the great right of defending himself in all proper methods against the claims of his creditor, especially, too, when that creditor by his own act had secured a lien on his property. If the section would lead us to infer anything as to the legis-

391; State v. Patterson, 17 T. C. A., 231; Slaughter v. Moore, 17 T. C. A., 233; Pioneer Savings & L. Co. v. Peck, 20 T. C. A., 111; Sealy v. Whitfield, 24 T. C. A., 56; Southern Rock Island Plow Co. v. Pitluk, 26 T. C. A., 327; Walker v. Stroud (T. Sup.), U. R. C., 1887; Bergstrom v. Burns (T. C. A.), U. R. C., 1893. The object of statutes fixing venue is protection and convenience of

lative will, it would be that it was their intention to secure a *right* to the defendant, and not to deprive him of one; and that is the right to replevy the property which has been seized, by giving a bond in a certain amount; for it will be noticed that in no other section of that act is this right of replevy secured to the debtor. In fact they seem anxious to prevent the possibility of misconstruction as to their meaning, for the proviso secures the right to appear and plead under all circumstances and in any instance. The creditor's rights were secured and protected by the lien on property seized by virtue of his attachment; which property must, by the law, remain in the hands of the officer until a proper bond is given by the debtor. The debtor's rights are enlarged by permitting him to replevy that property by bond in a certain amount; but surely it can not reasonably be contended that, if unable to give that bond, it was the legislative intention that his lips should be sealed, and his defense, however meritorious, unheard. Such is not the proper construction, and the court erred in so ruling.

We think that the court erred in permitting the plaintiff to amend his affidavit, after sustaining the plea in abatement filed by the defendant.

The statutory remedy by attachment being summary in its character and onerous in its effects, in other words, "in derogation of common right," has by all courts and in all times, save when greater latitude has been given by statute, been restrained by the most rigid rules of construction. In Grigg v. York this doctrine is laid down in our courts, and that it is the correct doctrine does not now admit of disputation. The right to amend the proceedings in attachments then does not exist, unless it be given in the statute of attachments, or by some other statute, in pari materia. No such right is found in the statute of attachments, passed in 1839, under which this action, is brought; but it is contended that by the twentieth section of the law "establishing the jurisdiction and powers of the district courts" (volume 1, page 204), that the right is given. That law says: "That every court shall have power to permit *amendments in all proceedings whatsoever* before verdict, so as to bring the merits of the question fairly to trial."

That proceedings in attachment are in the nature of civil suits, and to be governed by the ordinary rules applicable to such suits and prescribed by Congress—unless such rules be excluded in express words, or manifestly repugnant to the nature of the attachment process—is too plain a proposition to be controverted, and has been expressly decided by our court. See Fowler v. Poor. But that, for that reason, the law

---

resident citizens and to this end they should receive a liberal construction in favor of the protection intended. Statutes enlarging area of venue are not given a retroactive effect unless plainly expressed. Finch v. Edmonson, 9 T., 504; Baines v. Jemison, 86 T., 118. Plaintiff will not be permitted to maintain an action and deprive the defendant of his privilege by bringing his suit in one form and changing it by amendment to another, nor by taking a change of venue before answer is filed. Martin v. White, 20 T., 174; Fant v. Kenedy Pasture Co., 29 T. C. A., 530. But he may set up additional causes of action by way of amendment when same does not operate as a fraud on defendant's privilege. Kendall v. Hackworth, 66 T., 499. Defendant can not be deprived of the privilege to be sued in the proper county by

of amendments prescribed for the usual civil actions in courts of justice applies to the particular class called attachments, by no means follows. The Congress, in passing laws, are presumed to intend that the usual and universal rules of construction applied by courts to laws of a similar character will be given; and unless they wish such to be the rule of construction of the courts, they will express in terms a contrary intention. The rule of construction given by courts to laws regulating ordinary civil suits is liberal and comprehensive. The rule of construction given to the extraordinary process of attachment is, on the other hand, rigid, severe and restricted. These rules are the *law* itself, and we must presume that when it is the intention of Congress to change this law as to either class of cases, they will so expressly declare in words, or by implication so direct as to admit of no doubt. Many of the general enactments might apply to each class of cases; but when the rule of construction which forms the most prominent distinction between the two is to be touched, then the *words* must be *distinct,* or the *implication* indubitable. This law of amendments was passed nearly three years prior to the statute regulating attachments, and it applies to proceedings in common civil suits. The statute of attachments is silent on the subject of any amendment to ameliorate the rigor of construction which will necessarily be given to it by the courts; and it even by intimation, in the fourth section, avoids the conclusion that the Congress willed that any law of amendment should apply. The policy of the law is against permitting amendments to affidavits for any purpose, much less where the interests of parties might lead them to perjury; and whilst courts and juries look with suspicion and distrust on the oaths of persons whose interests are involved in any instance, they turn with *holy horror* from *amended swearing.* We think, therefore, that the court erred in permitting an amended affidavit to be made. It is contended, however, here, by the appellee, that the affidavit was not defective, and that it as well as the other proceedings under it were regular and proper. The objections taken to the affidavit were that it was defective in not containing an averment, "that the plaintiff was in danger, in consequence of the alleged nonresidence of said defendant, of losing his debt;" and second, that it was defective in not being made at the same time in which, and before the same officer by whom the other proceedings were had; having been sworn to, nearly thirty days before it was filed in the clerk's office, before the judge of the first district.

A mere inspection of the third section of the statute regulating proceedings in attachment will show that the first objection taken is un-

bringing suit against another at a place which is an exception as to the latter and not as to defendant. Hilliard v. Wilson, 76 T., 180, 184; Behrens Drug Co. v. Hamilton, 92 T., 284; R. R. S. & W. Ry. Co. v. Blount, 3 T. C. A., 282; First Nat. Bank v. East, 17 T. C. A., 176; Gresham v. Welsh, 17 T. C. A., 712. Until a new county is actually organized and new officers elected, jurisdictional domicile of its inhabitants remains in parent county. O'Shea v. Twohig, 9 T., 336; Runge v. Wyatt, 25 T. Supp., 291; Lumpkin v. Muncey, 66 T., 311; Baker v. Beck, 74 T., 562; Dodson v. Bunton, 81 T., 655, 657; Ruse v. Bartlett, 1 T. C. A., 335, 339; Henson v. Sackville, 2 T. C. A., 416. Suit to contest right to county office must be brought in district court of the county in

tenable. One of the substantive and distinct grounds for suing out an attachment is, that the party against whom it is sought "resides beyond the jurisdiction of the court, so that the ordinary process of the law can not be served upon him;" and when that is sworn to, along with the succeeding requisites, to wit, "the amount due, and the statement that the attachment is not sued out for the purpose of vexing or harassing the defendant," the affidavit is complete and proper. On the second point, I am instructed by a majority of the court to decide, that it is a fatal defect. The intention of the statute is that these proceedings, viz., the affidavit, the bond and the writ, shall be as nearly a simultaneous an act as possible.

Various persons are qualified under the statute to issue this writ, and each and every one has perfect and complete power over all the proceedings to the time of the delivery of the writ to the executive officer. A judge, a justice, or a clerk can take the affidavit and bond and issue the writ, returnable as the nature of the case may require; and it is likewise the duty of the judge, or justice, to return the bond and affidavit into the proper court. The rights of the plaintiff would not be endangered; for under no supposable case could it happen that he would be deprived of his remedy for want of an officer to whom he could make the application; whereas, the rights of the defendant would be seriously affected, if an affidavit to a fact, which may have existed at the time it was sworn to, should be held up for months, and then put into life and being after an entire change of the facts and circumstances of the case. No final and invariable rule could be adopted by the court as to the length of time which should elapse before the presumption of indebtedness (on an affidavit taken months before) would cease to exist, or the grounds for the affidavit have passed away. The spirit and intention of the law are against it; and the court below did not err in sustaining the plea of the defendant on that point. We have seen, however, that there was error in permitting the plaintiff to amend his affidavit after that decision, and proceed on the merits. The affidavit being null and void on account of its defective taking, all the proceedings thereon were void; and the judgment of the court below should have been what the judgment of this court now is, an entire dismissal of the cause. It is therefore ordered that the judgment of the court below be annulled and reversed, and that the case be dismissed at the costs of defendant in error.

*Reversed and dismissed.*

which the election was held. Rev. Stats., 1895, arts. 1796-1804g; Calverley v. Shank, 28 T. C. A., 473. Suit to supply lost instrument, should be brought in county where defendant resides. To supply lost records, in county where the instrument was recorded. Rev. Stats., arts. 4594 and 4585; Douglas v. Baker, 79 T., 499. Suit for specific performance should be brought in county where defendant resides, unless contract provides for performance elsewhere. Durst v. Swift, 11 T., 273; Hearst v. Kuykendall, 16 T., 327; Miller v. Thomas, 17 T., 170; Cavin v. Hill, 83 T., 73; McCampbell v. Durst, 15 T. C. A., 522, 530. Suit to compel a county surveyor to perform an official duty should be brought in the county of his residence, though others who are asserting an adverse interest are joined with him. T. Mex. Ry. Co. v. Locke, 63 T., 627; Thomson v. Locke, 66 T., 383, 392. Motion against a sheriff and his sureties for failure to pay over money collected on execution must be made in the

## No. XXI.

### GARNET ET AL. v. RICHARD R. McINTYRE ET UX.

*Motions on the part of appellants and also on the part of appellees. From Fannin County.*

HEMPHILL, CHIEF JUSTICE.—The motions in this cause have been considered; and some indulgence will be extended to the appellants, in consequence of the irregularities and defects of the conveyance by mail, which would not be granted under dissimilar circumstances. We are of opinion, however, that the appellants should have exercised a greater degree of diligence in causing to be corrected the errors and mistakes arising from the ignorance or negligence of the clerk, and placing the cause properly before the court. It is therefore ordered that the motion on the part of the appellees to dismiss the cause from the docket be overruled, and that a writ of certiorari be directed to the clerk of the District Court of Fannin County, commanding him to make a more full and perfect transcript of the record of the proceedings in the said case; provided, however, that costs of suit be paid by appellants on or before the 1st day of October next. And should the same not be paid on or before the time specified and satisfactory evidence thereof produced to the clerk of the said district court, that then and in that case the appeal be considered as dismissed; and the said clerk be required to issue execution against the appellants, as if no appeal had been taken; and the clerk of the Supreme Court is required to seal up the original papers sent up in this cause and place them in the hands of some safe person, for transmission to the clerk of the district court of the said county.

*Overruled.*

## No. XXII.

### SOLOMON WOLFE v. ROBERT STEPHENS.

*Appeal from Nacogdoches County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted by Robert Shephens against Solomon Wolfe, upon a note of said Wolfe payable to the order of Washington Dorsey, and indorsed by him, without date, to the appellee.

The appellant filed with his plea certain interrogatories under oath, to ascertain whether the appellee was the owner of the note sued on; and if not, the appellee was called upon to disclose the real owner of the same. This evidence was alleged to be material to his defense.

---

court out of which the execution issued. De Witt v. Dunn, 15 T., 106; Griswold v. Chandler, 22 T., 637; De la Garza v. Booth, 28 T., 478; Robinson v.

At the trial in the court below, the plaintiff's counsel moved to strike out that portion of the defendant's plea which charged that the plaintiff was not the owner of the note in suit, together with the interrogatories propounded to plaintiff. The court sustained the motion of the plaintiff's counsel; from which judgment the defendant has appealed to this court.

That portion of the appellant's plea which sets up that the plaintiff is not the owner of the note sued on is a plea in abatement, but not verified according to the statute. This court has already decided, in Weatherford v. Tinnin, that "the denial of the right of the plaintiff to sue should be taken advantage of by plea in abatement, *supported by oath or affirmation.*" The plea in the case before us is not so supported, and was properly overruled by the court.

The interrogatories propounded by the defendant to plaintiff sought to obtain evidence to support the plea in abatement. That plea having been overruled, any testimony offered to sustain it should have been rejected. The interrogatories were therefore properly stricken out as irrelevant to the issue before the court.

The judgment must be affirmed.

*Affirmed.*

### No. XXIII.

### THE REPUBLIC OF TEXAS v. BAILY INGLISH ET AL., HEIRS OF JOSEPH INGLISH, DECEASED.

(See Note 73.)

*Appeal from Lamar County.*

JONES (WILLIAM E.), JUSTICE.—This was a suit commenced in the District Court of Lamar County by the appellees, as heirs at law of Joseph Inglish, deceased, for a league of land, under the provisions of the eleventh section of the Act of 4th February, 1841, entitled "An act supplementary to an act to detect fraudulent land certificates," etc. The petitioners set forth that their ancestor immigrated to that part of Texas, now known as Lamar County, about the 25th December, 1835, and there resided until his death, which occurred on the 17th February, 1836; that he was a married man and the head of a family. On the trial of this case at the September term, 1843, of the district court, the jury returned the following verdict: "We the jury find for the plaintiffs and say that the facts contained in their petition are true." Upon the verdict a judgment was rendered in favor of the plaintiffs for one league and labor of land, and a certificate ordered to issue therefor; from which judgment an appeal was taken to this court on behalf of the Republic.

Schmidt, 48 T., 13. Suit by scire facias to revive a judgment must be brought in the court where the judgment was rendered. Waller v. Huff, 9 T., 530; Perkins v. Hume, 10 T., 50; Masterson v. Cundiff, 58 T., 472; Schmidtke v. Miller, 71 T., 103. An action of debt on a judgment may be brought in county where defendant resides. Townsend v. Smith, 20 T., 465; Johnson v. Skipworth,

In the decision of this case two questions present themselves for our consideration:

1. Was Joseph Inglish entitled to land as a citizen of this Republic, under the Constitution and laws? And if not,

2. Was he entitled to land as a colonist or settler, under any law of the State of Coahuila and Texas?

The appellees in this case, claiming as the heirs and representatives of Joseph Inglish, can recover only what their ancestor himself was entitled to at the time of his death. Section 10 of the general provisions of the Constitution declares that all persons (Africans, the descendants of Africans, and Indians excepted) who were residing in Texas at the date of the declaration of independence, shall be considered citizens of the Republic, and that all such who shall not have received lands as colonists shall be entitled, if heads of families, to one league and labor each. The right to land, predicated upon citizenship in this Republic, can not attach back to a period anterior to the declaration of independence on the 2d day of March, 1836. That is the time fixed by the Constitution at which residence confers citizenship, and as Joseph Inglish was dead before that day, no claim to land could possibly have accrued to him under that provision of the Constitution, as a citizen of the Republic.

We are then led to the second inquiry, whether under any law of the State of Coahuila and Texas he was entitled to lands as a colonist or settler?

The general colonization law of the 24th day of March, 1825, Decree No. 16, of the Laws of Coahuila and Texas, was repealed by article 38 of Decree No. 190, of the date of 28th April, 1832, and a system of colonization established in many respects different from that of 1825. This second colonization law was itself repealed by article 29 of Decree No. 272, of the date of 26th of March, 1834, and by article 30 it is declared that no further colonization contracts shall be made. By this decree a new system for the disposition of the vacant lands of the State by sales at public auction was established and substituted for the old plan of colonization. The repealing decrees, referred to above, severally declare that all contracts made under the provisions of the repealed decrees shall be fulfilled by the government; but it is not alleged that the deceased Joseph Inglish was brought into the country as a colonist, or received as such by any empressario, in fulfillment of any subsisting colonization contract entered into while those laws were in force.

Decree No. 309, of the date of 2d May, 1835, article 1, declares:

---

59 T., 473. The term "cause of action," as used in statutes regulating venue, means not only the right which plaintiff has, but also any injury thereto, and suit may be brought in county where defendant resides for damage to land in a foreign country. Armendiaz v. Stillman, 54 T., 623; H. & T. C. Ry. Co. v. Hill, 63 T., 381. Attachment suit should be brought in county where defendant resides, though the property to be attached is in another county. Gibbs v. Petree, 7 T. C. A., 526. As space does not permit full notes on the exceptions to the general rule that suit must be brought in the county where defendant has his domicile, the investigator is referred to the notes on same to the following cases:  Exception 1, 9 Texas, 78; exception 2, 6 Texas, 275; exception

"That all persons, or families *now residing* in Texas, and who have emigrated *previous* to the date of this law for the purpose of settling in the country, and who have not received lands according to the colonization laws, are hereby declared to be entitled to the portions designated by the law of the 24th March, 1825, provided that they possess the qualifications therein prescribed."

This decree secures lands to those only who were residing in Texas at the date of the decree, and had emigrated previously thereto. It makes no provision whatever for those who might emigrate thereafter; and as Joseph Inglish, through whom the appellees claim, did not arrive in the country until the month of December succeeding the passage of this law, he could not become a beneficiary of its provisions.. This being the last legislative act of Coahuila and Texas granting land to emigrants, we are led to the necessary conclusion, that at the time of his death Joseph Inglish was not entitled to land under any law of the State of Coahuila and Texas.

However hard it may seem to exclude the heirs of those who arrived in this country subsequent to the 2d day of May, 1835, and died prior to the declaration of independence, from the benefits of the profuse liberality of the Republic in the distribution of her public lands, yet it is not in the power of this court to give vitality to a claim which has no foundation in the laws. We know of no remedy for such cases, except legislative action. Let the judgment of the court below be reversed and annulled, and the appellees pay the costs.

*Reversed.*

## No. XXIV.

### SADDLER v. THE REPUBLIC.

#### (See Note 74.)

*Appeal from Lamar County.*

OCHILTREE, JUSTICE.—At the fall term, 1843, of the District Court of Lamar County, the grand jury of the said county found a true bill against Hiram Saddler, Thomas Doss, Joshua Dillingham and C. W. Saddler for an affray. At the next spring term the district attorney entered a discontinuance (nolle prosequi) as to Dillingham. The other defendants being in custody pleaded "not guilty." A jury were impaneled, who after hearing the evidence, etc., returned into court this verdict: "We the jury find that Hiram Saddler is guilty of an affray. A. G. Kimball, foreman."

Reasons in arrest of judgment were filed and overruled by the court below, who fined Saddler $10 with the costs.

---

3, 13 Texas, 492; exception 4, 4 Texas, 289; exception 5, 11 Texas, 273; exception 6, 3 Texas, 145; exception 7, 9 Texas, 504; exception 8, 62 Texas, 647; exception 9, 18 Texas, 118; exceptions 10, 11 and 12, 9 Texas, 78; exception 13, 56 Texas, 130; exception 14, 5 Texas, 471; exception 15, 13 Texas, 320; exception 16, 32 Texas, 578; exception 17, 3 Texas, 429; exception 18, 61 Texas, 576;

From this decision, an appeal has been taken to this court.

Affray is an offense at common law.

The district attorney, who drew this indictment, has thought proper slightly to vary from the usual precedent, and in so doing has certainly not strengthened his indictment. He charges, that "Hiram Saddler and Thomas Doss and Joshua Dillingham and Westly Saddler, late of said county, on the first day of February, in the year of our Lord one thousand eight hundred and forty-three, being then and there unlawfully assembled together, in a warlike manner, in a certain highway, the same being a public road, in the county of Lamar aforesaid, unlawfully and to the great terror and disturbance of divers good citizens, then and there being, did quarrel and fight and make an affray," etc. Now as quarreling and fighting, eo nomine, are not offenses known either to the common law or to the statutes of the Republic of Texas, we will treat them as surplusage, which will leave the indictment single and in strict conformity to the precedents and law.

The reasons filed in arrest of judgment and depended on here resolve themselves into one only, viz: That H. Saddler could not be considered guilty of an affray, as the others with whom he had been indicted had not been also found guilty; that an affray can never take place unless the parties fight by consent.

We think differently. Saddler might well be convicted although the men with whom he fought were acquitted. It is not essential, to constitute an affray, that the fighting should be by consent of the parties concerned. It is not the mere fighting of the persons engaged that constitutes the gravamen of this offense. "It is because the violence is committed in a public place and to the terror of the people, that the crime is called an affray instead of assault and battery." See Cash v. State, 2 Tenn., 198, 199; Hawkins' Pleas of the Crown, chaps. A. and B., and "Affrays."

The judgment of the court below must be in all things affirmed.

*Affirmed.*

## No. XXV.

### CHARLES CHEVALIER V. DAVID RUSK.

(See Note 75.)

*Appeal from Nacogdoches County.*

JONES (WILLIAM J.), JUSTICE.—The facts presented by the record in this case show, in substance, that David Rusk, the sheriff of Nacogdoches County, received from Charles Chevalier two several executions, issued by a justice of the peace of said county, in the name of said

---

exception 19, 4 Texas, 289; exception 20, 5 Texas, 471; exceptions 21 and 22, 66 Texas, 363; exceptions 23, 24, 25 and 26, 50 Texas, 181. As to where injunctions to stay execution must be sued out and made returnable, see note to 2 Texas, 259.

Chevalier, against A. H. Bell and Charles Hotchkiss et al.; which executions were placed in the hands of the said Rusk, sheriff as aforesaid, to be served of the goods and chattels of the said Bell and of the said Hotchkiss and others. The petition of the appellant further alleges that a summons issued by a justice of the peace of said county, in the name of Charles Chevalier against Jacob Garrett, was delivered to the appellee, as sheriff of Nacogdoches County, to serve as the law directed; *all* of which writs he refused to execute.

To the plaintiff's petition the defendant demurred (and issue joined thereupon), which was sustained by the court below.

The act of Congress of 1836, which empowers the sheriffs to receive all process directed to them from a magistrate's court, is compulsory and without qualification; "to execute *all* writs and other process to them legally issued and directed from any justice of the peace or court of record, and shall make due return thereof to the proper court on the day to which the same is returnable; and any sheriff who shall fail herein, or make a false return, shall be liable (in addition to other penalties) to the party injured, for all damages he may sustain thereby."

Our statutes (in addition to the ordinary duties of the sheriffs) impose many requirements not known to the common law, and the duties of sheriffs in some counties have, from their multiplicity and petty character, become extremely onerous. Under such circumstances, cases may arise where those officers might be compelled to omit the performance of one duty in order to execute the other faithfully. As in the case of an order from a magistrate to serve his summons, whilst the sheriff was in attendance upon the district court, or executing its commands, or discharging any duties devolved upon him by courts whose jurisdiction is coextensive with the county. The Constitution, in creating the office of sheriff, does not impose the obligation upon the officer to make a deputy; and although, under the laws, he has power to appoint his deputy, we know of no authority to compel him to do so.

In the case before us there is no allegation in the petition of the plaintiff that the sheriff had a deputy; but it distinctly alleges the delivery of the several writs, emanating from the magistrates, to the sheriff himself, who refused to execute them. The act of Congress defining the duties of sheriffs, from which an extract has been made, is broadly phrased, and by its strict letter would leave the sheriff no room to justify his refusal to obey the mandate of a magistrate, although it might impose upon him a double duty to be performed at one and the same time. But it is our place to give this statute a fair and liberal interpretation; and upon the old legal maxim, that "no man is required

**Note 59.**—McKinney v. Peters, p. 545.

[1] Words as "executor," etc., held merely discriptio personae, and the contract with or the act that of the person described. Gayle v. Ennis, 1 T., 184; Groce v. Herndon, 2 T., 410; Lipscomb v. Ward, 2 T., 277; Claiborne v. Yoeman, 15 T., 44; Traynham v. Jackson, 15 T., 170; Gibson v. Irby, 17 T., 173; Hall v. Pearman, 20 T., 168; Morrison v. Hodges, 25 T. Supp., 176; Nelson v. Bagby, 25 T. Supp., 305; Rider v. Duval, 28 T., 622; Gregory v. Leigh, 33 T., 813; Stevens v. Morris, 35 T., 709; Crawford v. Wilcox, 68 T., 109; Round-

to perform impossibilities," we are led to the decision that the sheriff may show, in avoidance of the several penalties imposed by law for a failure to execute and return process emanating from a magistrate's court, that he had other duties of a paramount character to discharge, which rendered it *impossible* for him to execute and return such process in due course of law.

This defense is matter of evidence for the decision of a jury, under the charge of the court, as to what may be admitted to establish a legal excuse.

Another cause of demurrer, taken by the defendant in the court below, is, that the plaintiff can not blend several causes of action in one suit.

In the case of the Duke of Bedford v. Alcock, 1 Wilson, 252, the chief justice who delivered the opinion of the court adjudged, that although the plaintiff had declared upon *three* contracts (one *implied* and two *express* contracts) they must give judgment for the plaintiff, as the *process* and *judgments* in all the three counts were the same. We there find the broad dictum, that debt and detinue may be joined although the pleas are different; and in detinue, the judgment must vary from that in debt.

In Cecil v. Briggs, 2 Tenn., 639, two suits were brought, and a rule obtained to show cause why they should not be consolidated. It was objected against the rule, that it was not necessary but inconvenient for the plaintiff in all cases to consolidate his several causes of action, though they were of the same nature and accrued at the same time. The court said "that, as by the rules of law the plaintiff might have comprised both his causes of action in one suit, it was oppressive to sue out two writs at the same time. That the possibility of this rule being attended with any inconvenience to the plaintiff was no answer to this application." The plaintiff was required to consolidate and to pay costs.

The civil law authorities have kept in view the same principle here decided, and the general rule, laid down by them, is, that all demands not inconsistent with each other must be joined in one action. Both systems equally agree in condemning a multiplicity of suits and an accumulation of costs.

Under our statutes, intended to simplify the rules of pleading, no distinctions as to forms of action are recognized, and a great latitude, not tending to manifest confusion, may be allowed in the joinder of actions.

This court has already decided, in Binge and Blair v. Smith, that where the plaintiff has two causes of action which may be joined in one,

tree v. Stone, 81 T., 299; Warren v. Harrold, 92 T., 420; Dallas Co. v. Club Land and Cattle Co., 95 T., 200; Horton v. Garrison, 1 T. C. A., 31; Llano Improvement Co. v. Cross, 5 T. C. A., 175; Elwell v. Tatum, 6 T. C. A., 397; Wilson v. Hall, 13 T. C. A., 489; Club Land and Cattle Co. v. Dallas Co., 26 T. C. A., 449; Fire Ass'n v. Laning (T. C. A.), U. R. C., 1895; Brown v. Adams (T. C. A.), U. R. C., 1900. Administrator may sue, without reference to his fiduciary character, when the debt is made payable to him as such. Gayle v.

he ought so to proceed, and if he sever he should be *compelled* to consolidate. This decision concurs with the general rule laid down by the common law authorities, which is stated to be, "that when the *same plea* may be pleaded, and the *same judgment* given on all the demands, or when the *same judgment* is to be given, though *the pleas be different,* they may be joined."

We are of opinion that the judgment of the court below upon the demurrer should be annulled and reversed, and the cause remanded to the District Court of Nacogdoches County, with instructions that the defendant be allowed to amend his pleadings and proceed to trial upon the merits of the case.

*Reversed and remanded.*

Judge Wm. E. Jones says: "I dissent from much of the foregoing opinion. I agree with so much of it as relates to the joinder of the different causes of action in the petition, but do not agree to so much of it as decides that a sheriff is responsible for refusing to execute process in civil cases issued by justices of the peace. I think he may execute such process, and if he receives it he will be responsible, unless for good cause shown for its non-execution, but that he can not be compelled to receive it."

Judge Jack says: "I have no doubts, under our statutes, that sheriffs are bound to execute process issuing from justices of the peace and are responsible to any party injured for a refusal to do so; unless it can be shown that some sufficient reason existed for their failure to serve such process. I doubt as to the correctness of the joinder of the several causes of action in the present case."

## No. XXVI.

### ALLEN v. SCOTT ET AL.

*Appeal from Bowie County.*

MORRIS, JUSTICE.—This cause originally commenced in the District Court of Bowie County, and was ordered to be transferred by the judge of that court to the southern division of Red River County, which has been organized into a judicial district by the last Congress. The court is of opinion that this is such a judgment as can be appealed from. They further think, that the law organizing these judicial districts is unconstitutional and void, because it violates the spirit of the Constitution and is at war with its plain meaning and intent, in this: That from the Constitution it is plain that a district court should be held in

Ennis, 1 T., 184; Groce v. Herndon, 2 T., 410; Claiborne v. Yoeman, 15 T., 44; Nelson v. Bagby, 25 T. Supp., 305; Moss v. Witcher, 35 T., 388; Llano Improvement Co. v. Cross, 5 T. C. A., 175, 178; Exell v. Edwards, 2 App. C., sec. 769; Fire Ass'n v. Laning (T. C. A.), U. R. C., 1895.

each county of the Republic; the officers incident to that court being expressly provided for and required in each county. Vide, art. 4, secs. 6-12.

That these officers are limited in number and have special duties, not only under the provision of the statutes but also under the intendment of the Constitution itself.

That this law requires a clerk, who is the custodian of the court's records, to keep them at several and distinct places at one and the same time, which compels him to the appointment of a deputy, which Congress can not do; doing indirectly what they can not do directly, in evasion of the Constitution. That the process of a court of general jurisdiction over a whole county must extend to each part and portion of that county.

This law recognizes the courts held in the various divisions of a county as being identically the same; but restrains its process and powers within other than the county limits.

If this power exists to extend this privilege to one precinct, it must exist to extend to an indefinite number of precincts; and a court could be held at each man's house in every county. But the Constitution having prescribed the requisite number of persons and extent of territory necessary to the establishment of a county, and each county being entitled to a court, a limit is fixed to the power of Congress in that respect; which by means of this law they attempt to evade and set at naught.

Even though the question of public policy be not a matter for judicial interference, still when an act is violently at war with such policy, it would afford a strong argument against its constitutionality, if the power to pass such act be not expressly given; and finally, because the law which has been passed is so foreign from even any inference that could be drawn from the Constitution, that we can not presume that it ever entered into the imagination of the framers of that instrument that such an act would be attempted; and hence the only difficulty of proving its unconstitutionality. For these and other grounds we decide that law to be unconstitutional, and order and adjudge that the judgment of the court below, transferring this cause to the said district, be set aside and annulled, and the case remain for adjudication in the records of Bowie County, where it was properly brought.

An extended opinion in this cause will be filed in the records of the court at or before the next term of this court; this being intended merely as an abstract of some of the points on which it will be based.

Judge Wm. E. Jones says: "I give no opinion in this case."

---

[2] Apparent legal holder or owner may sue in his own name, though actual ownership is in another. Thompson v. Cartwright, 1 T., 87; Gayle v. Ennis, 1 T., 184; McMillan v. Croft, 2 T., 397; Groce v. Herndon, 2 T., 410; Hays v. Cage, 2 T., 501; Fowler v. Willis, 4 T., 46; Andrews v. Hoxie, 5 T., 171; Mertel v. Hernsheim, 5 T., 205; Thomas v. Young, 5 T., 253; Knight v. Holloman, 6 T., 153; Butler v. Robertson, 11 T., 142; Frazier v. Moore, 11 T., 755; De Cordova v. Atchison, 13 T., 372; Guest v. Rhine, 16 T., 549; Wimbish v. Holt, 26 T., 673; Rider v. Duval, 28 T., 622; Barnett v. Logue, 29 T., 282; Zachary v.

## No. XXVII.

### WM. H. BINGE AND JAS. BLAIR V. SAMPSON SMITH.

(See Note 76.)

*Appeal from Red River County.*

JONES (WILLIAM J.), JUSTICE.—This case is brought up by writ of error from the District Court of Red River County, upon a judgment rendered therein at the spring term of 1844, and the record presents the following facts: Suit was instituted by Sampson Smith against William H. Binge as the maker, and James Blair as indorser of a promissory note, made by said Binge to said Blair and indorsed by him to the defendant in error, for the sum of $300, payable on or before the 1st day of January, 1843. The defendants, after being duly cited, failing to appear and answer the plaintiff's petition, judgment by default nisi was rendered against them.

Upon an inspection of the record by the plaintiffs in error several grounds are assigned as causes of reversal of the judgment rendered in the district court. We will only examine the first and second assignments of error.

1. The cause of action being a joint contract made by Binge and Titus, the said Titus, or in case of his decease, his legal representative should have been sued; or the plaintiff's petition should have averred that some legal steps had been taken against the said Titus, or in case of death, against his representative.

2. That the maker and indorser, although sued, could not be properly joined in the same action.

The first ground of error is not sustained either by the common law or by out statutes relating to successions. At common law it is clear, in case of a *joint* contract, if one of the parties die the survivor alone can be sued. In equity the principal and the legal representative of the deceased security may be joined; but as the plaintiff had his option, and he alone can be injured by the failure to join the principal and the representative of the deceased security in his action, it can not be considered error in the plaintiff to sue the principal alone. The security being sued and the principal omitted, might be cause of error, without an averment sufficient in law to excuse such omission. But the seventeenth and eighteenth sections of the act of Congress regulating the settlement of successions, require that every claimant against a succession shall present his claim to the executor or administrator before suit is commenced, and if accepted by him, shall be ranked among the acknowledged debts against the estate. If so accepted and placed among the acknowledged debts of the succession, the plaintiff could not have *sued* the representative of Titus.

Gregory, 32 T., 452; Moss v. Witcher, 35 T., 388; Rodgers v. Bass, 46 T., 505; Jackson v. Elliott, 49 T., 62; Allen v. Pennell, 51 T., 165; Brown v. Cheno-

Upon the second assignment of error, that the maker and indorser could not be properly joined in the same action, the common law authorities, although well settled, are not applicable to this case; and the court here would not feel itself authorized to vary a practice established by such high authority, if it were not that the spirit and intent of our own local legislation justify us in making the departure.

The acts of Congress of December 22, 1836, and January 25, 1840, although they do *not require* the maker and indorser of a promissory note to be sued together, yet they clearly indicate, from their peculiar phraseology, that they *may* be joined in one and the same action, if sued *simultaneously*. The language of the first statute is, that "no person shall be sued as indorser or security, unless suit has been first or simultaneously commenced against the principal; provided the principal is within the jurisdiction of the courts of the Republic."

Indorsers and securities seem, by this statute, to have been placed upon the same footing. It can not be doubted that the principal and security must be joined in the same action, if both be living. May we not then fairly raise the presumption that the statute, in coupling security and indorser, intended to give the same remedy against maker and indorser as against principal and security, if both were sued *simultaneously?*

But the statute was not considered by Congress a sufficient protection to securities and indorsers, and the act of January 25, 1840, dispensing with the necessity of protest, after referring to drawers, indorsers and assignors, enacts, that "every such party (meaning drawers, indorsers and assignors) shall be held responsible as *security* for the final payment of a promissory note, check, draft," etc. This statute, so obviously intended to guard securities and indorsers against the delays and frauds of the holders of negotiable or assignable paper, recognizes the indorser as a *security* in express terms; and to that extent makes the law appertaining to principal and security equally applicable to drawer and indorser.

The statute of 1840 does not imperatively require, as it does not expressly exclude, the joinder of the maker and indorser. Under its provisions, the maker may be sued at the *first* term of the district court (or at the second term for good cause of failure shown) after the obligation falls due, and the latter may be cited at any subsequent term; but under the provisions of the act of 1836, still in force, if the maker and indorser be sued *simultaneously,* they may and should be joined in the same action.

This practice would prevent a multiplicity of suits and an accumulation of costs, which courts of justice should ever seek to avoid.

worth, 51 T., 469; Matlock v. Glover, 63 T., 231; Roundtree v. Stone, 81 T., 299; Allison v. Ins. Co., 87 T., 593; McCarty v. Brackenridge, 1 T. C. A., 170; Llano Improvement Co. v. Cross, 5 T. C. A., 175; Krueger v. Klinger, 10 T. C. A., 576; Sparks v. Coats, 22 T. C. A., 455; Sanders v. Atkinson, 1 App. C., sec. 1326; Wheeler v. Roberts, 2 App. C., sec. 128; Jensen v. Hays, 2 App. C., sec. 567; Ezell v. Edwards, 2 App. C., sec. 769.

' The joinder of the maker and indorser does not preclude each party from setting up his own defense; and the court will render such judgment against each as the facts and the law of the case may require.

The court here settles it as a matter of practice, under the provisions of our statutes, that the drawer and indorser of a promissory note, bill of exchange, check, draft or other mercantile negotiable instrument, may and should be joined in the same action, if both be sued *simultaneously*.

And where separate actions are brought at different terms in the same court, the plaintiff may be required to consolidate, in order to save costs; unless in the opinion of the presiding judge manifest injustice will thereby be done to one or other of the defendants.

It is therefore considered here, that there is no sufficient error apparent upon the face of the record from the court below to reverse, but that the judgment of the said court should be affirmed.

*Affirmed.*

Judges Morris and Baylor say: "Upon the first point decided in this opinion we concur with our brother judges. On the second, we totally dissent; and are of opinion that the parties defendant were improperly joined, which would be sufficient cause for reversal."

## No. XXVIII.

### SIMMS AND SIMMS v. PRICE.

*Appeal from Red River County.*

MORRIS, JUSTICE.—James W. and Sam W. Simms allege indebtedness on the part of one Price to them, in an amount exceeding $100, for goods, wares and merchandise purchased and received by said Price from them, and also for money advanced for his (Price's) use and benefit. They allege that no part of this amount has been paid by them; but that a certain bank bill, which is appended to their petition, had been received by them from Price; which bill they now offer and had previously offered to return, averring the same to be counterfeit. Price, being duly served, appeared and filed his answer, denying the allegations in the petition. The cause was submitted to a jury, who rendered a verdict for the plaintiffs in the sum of $100, with interest; on which verdict a judgment was entered, and an appeal prayed by defendant.

---

Note 60.—Scott v. Maynard, p. 548.

¹ Act of January 18, 1840 (Gammel's Laws of Texas, vol. 2, p. 28), had no application to contracts made prior to its passage. Hodges v. Johnson, 15 T., 570. Before its passage, parol sales of land accompanied by possession were valid. Briscoe v. Bronaugh, 1 T., 326; Lynch v. Baxter, 4 T., 431; Monroe v. Searcy, 20 T., 348; Sullivan v. Dimmitt, 34 T., 114; Downs v. Porter, 54 T., 59; Barrett v. Spence (T. C. A.), U. R. C., 1902. Under decree of March 24, 1825 (Gammel's Laws of Texas, vol. 1, p. 125), and prior to decree of March 26, 1834 (Gammel's Laws of Texas, vol. 1, p. 357), sales of land and contracts to sell by colonists, before issuance of title, occupation and cultivation for six years, were void. After decree of March 26, 1834, and up to date of the Constitution of the Republic, they were void if made before issuance of title.

This cause is submitted to the court on the facts, a statement of which is embodied in the record. Without going into an examination of those facts, it is only necessary for us to say, that this court has repeatedly decided that they will not set aside the verdict of a jury unless the same be clearly and manifestly against the evidence adduced before them.

The testimony embodied in this record, although somewhat contradictory, still presents a case which it is peculiarly the province of the jury to investigate and determine, and we can see no reason to disturb their verdict. It is therefore considered by the court, that the judgment below be in all things affirmed.

*Affirmed.*

Judge Ochiltree says: "The weight of testimony presented to this court is strongly in favor of the fact that the bill sued for is genuine. With regard to the character of the witnesses we of course know nothing. If the witnesses were of equal character, the verdict of the jury was certainly against the weight of testimony. I therefore think that the judgment should have been reversed and the case remanded."

## No. XXIX.

### LEE MORRIS v. ASHLEY AND COLIN McKINNEY.

*Appeal from Bowie County.*

MORRIS, JUSTICE.—The plaintiff below, who is the appellant in this court, filed his bill, averring that in the year 1835 he came to the county of Red River, in the Republic of Texas; occupied, improved and cultivated a piece of land in that portion of said county known now as the county of Bowie; that he continued to occupy and cultivate or cause to be cultivated said land from that period until the year 1842, and that he is still in possession of the same; that he has obtained a certificate from the board of land commissioners, organized under the laws of this Republic, for one-third of a league of land as a single man, and that under the Constitution and laws of the Republic he is entitled to have the same located and surveyed, so as to include his said improvements; that he has agreed on conditional lines with certain individuals (naming them) as the boundaries of said survey. But that Colin and Ashley McKinney, combining together fraudulently to injure him, set up a claim to said land, by virtue of fraudulent surveys made on two certain fraudulent certificates, purporting to have been issued by one Benjamin R. Milam, under and by authority of the Mexican government, to the said McKinneys. That the said surveys cover all the land claimed by

Hunt v. Robinson, 1 T., 748; Robbins v. Robbins, 3 T., 496; Spillers v. Clapp, 3 T., 498; Desmuke v. Griffin, 10 T., 113; Emmons v. Oldham, 12 T., 18; Box v. Lawrence, 14 T., 545; Flanikin v. Fokes, 15 T., 180; Clay v. Cook, 16 T., 70; Soye v. McCallister, 18 T., 80; Atkinson v. Bell, 18 T., 474; Causici v. La Coste, 20 T., 269; Williams v. Chandler, 25 T., 4; Clay v. Clay, 26 T., 24; Ledyard v. Brown, 27 T., 393; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678; Holmes v. Johns, 56 T., 41; Cook v. Lindsey, 57 T., 67; Grant v. Wallis, 60 T.,

petitioner, a conditional line having been agreed upon by the McKinneys, dividing the land in two parts; and that the said McKinneys are endeavoring to procure patents for the same from the Commissioner of the General Land Office. He therefore prays that they be made parties defendant to his bill; that an injunction issue restraining them from further proceedings; that they be required to set forth what right, title or claim they have to this land; and that the petitioner's right to a location and survey of the same be adjudicated and established.

On this petition an injunction was ordered by the judge below. The defendants were regularly summoned and appeared and answered by filing a general demurrer, with special causes assigned, and also an answer to the merits. The demurrer was sustained in the court below and judgment entered up, dissolving the injunction and dismissing the petition; from which judgment an appeal was taken to this court.

The grounds of demurrer are:

1. That the plaintiff has no cause of action whatever.

2. Multifariousness in the petition; in the joinder of two several causes of action, which should have formed the basis of separate and distinct actions at law.

3. Improper joinder of defendants; no joint interest having been alleged in them to the land claimed by plaintiff.

We will direct our attention to the two latter grounds of demurrer alone, they having been the only points relied on by counsel for a reversal or affirmance of the judgment below. And these two are so closely allied, that the decision of one almost by necessity involves that of the other. On the subject of multifariousness, we can only arrive at correct conclusions by applying the general principles, established by various authorities, to the particular case under consideration, and determining therefrom whether there is such a misjoinder in parties, either as to interest or person, as would warrant the court in sustaining an exception on that ground. In 2 Maddock, page 294, it is laid down, "that the courts will not permit a plaintiff to demand by one bill several matters of different natures against several defendants;" and the reason given for this rule is the plain and obvious one, that thereby costs might unjustly and onerously accumulate against a party by the delay incident to the adjudication of the rights of a codefendant with whom he was in no way interested.

In Comyn's Digest, 7, B. Chancery, page 2, the principle is expressed, that all interested in the "demand" ought 'to be parties in equity; and in examining the various expressions of various judges and authors on this subject, we might probably arrive at the general principle, as laid

---

350; Brown v. Simpson, 67 T., 225; Sideck v. Duran, 67 T., 256; Houston v. Killough, 80 T., 296; Baldwin v. Goldfrank, 9 T. C. A., 269; Clay v. Clay, 2 U. C., 357; Buchanan v. Park (T. C. A.), U. R. C., 1896. Sale was sufficient consideration for a new contract and could be ratified after removal of prohibition. Hunt v. Turner, 9 T., 385; Burleson v. Burleson, 11 T., 2; Atkinson v. Bell, 18 T., 474; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678; Grant v. Wallis, 60 T., 350; Williams v. Wilson, 76 T., 69; Sewell v. Laurence, 2 U. C., 376. Colonists could alienate at expiration of six years. Desmuke v. Griffin,

down by Calvert on Parties, page 6, chapter 1, section 1, "that all interested in the object of the suit should be parties." In the case of the Mayor of York v. Pilkington a general right of fishing was established against many persons, unconnected and claiming several and distinct rights therein; on the principle, "that there was one common interest in all the parties defendant, centering in the point in issue." Apply these principles to the case under consideration. The "object" of the suit is to establish the plaintiff's right to an entire tract of land; parts of which "entirely" are claimed by defendants. The point in issue is the correctness of the *plaintiff's claim;* and a common interest, on the part of the defendants, center in that point. The decree of the court, establishing that right for the plaintiff, could be given without embarrassment or difficulty, and multiplicity of actions, which is abhorrent to the principles of equity, avoided. We can therefore have but little difficulty in arriving at the conclusion that the parties are properly joined, and that the judge below erred in sustaining the demurrer.

It is ordered, decreed and adjudged, that the judgment in the court below be annulled and reversed; that the demurrer be overruled and the cause remanded to proceed upon the merits.

*Reversed and remanded.*

## No. XXX.

### CLEMENT R. JOHNS v. THE REPUBLIC OF TEXAS.

#### (See Note 77.)

*Apeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The appellant instituted suit to obtain a certificate for one-third of a league of land, which he claimed to be due to one James W. Herron, the original vendor of the headright. Judgment was given for the Republic and the following bill of exceptions was filed:

"In this case the presiding judge charge the jury, that before the plaintiff can recover it is incumbent on him to prove that the original claimant, Herron, was a resident citizen of Texas at the time the application for a land certificate was made before the board of land commissioners; to which the plaintiff excepts and prays that this exception form a part of the record."

We are of opinion that the judge of the court below in his charge to the jury did not err. The land law of 1837, in section 12, requires the purchaser of a headright to prove, among other matters, "that the person represented as entitled to a grant is actually a resident of the Republic at the time the application for the grant is made." In the cases of

---

10 T., 113; Clay v. Clay, 16 T., 70; Atkinson v. Bell, 18 T., 478; Clay v. Clay, 26 T., 24; Thomas v. Moore, 46 T., 433. Under decree of 1834, colonist could sell, subject to occupation and cultivation by his grantee. Emmons v. Oldham, 12 T., 18; Atkinson v. Bell, 18 T., 474; Johnston v. Smith, 21 T., 722; Clay v. Clay, 26 T., 24. And so could a grantee of a concession under decree

Board of Land Commissioners v. James Reily, Assignee, and of The Same v. Jesse Walling, we have decided that this provision of the statute was not in conflict with the Constitution. The question of discrepancy between the two instruments has not perhaps yet been argued with the elaborate effort or been subject to the thorough investigation which its importance and the magnitude of the interests involved would seem to require. The principles laid down in the cases above cited, not having been impugned in argument, will not be re-examined. They are decisive of the exception taken in this case. We are of opinion that there was no error in the charge of the judge, and it is therefore ordered, adjudged and decreed that the appeal be dismissed.

## No. XXXI.

### HARDIN v. TITUS.

#### (See Note 78.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This suit was brought for the recovery of a note, dated: "Hernando, Miss., Nov. 11, 1839.—On or before the first day of January, 1842, I promise to pay John L. Brown, seven hundred dollars, in the currency of this country, for value received of him. (Signed) John Hardin."

This note was assigned to the plaintiff by indorsement, in June, 1841.

The petition contains the usual allegations in a suit instituted by the indorsee of a promissory note against the maker, without any special averment respecting the currency in which the note purports to be made payable; and concludes with an allegation that the defendant has never paid the demand, and with a prayer for process and judgment against the defendant for the amount of the note with interest and costs.

The answer consists of a demurrer which avers that the plaintiff "has not set forth in his petition such a cause as entitles him to judgment;" also of a plea, "that on the day the note became due the defendant tendered to the plaintiff the full amount demanded by said note, which he refused to accept; and that the defendant is still ready to pay the plaintiff the same, to wit, the sum of seven hundred dollars in bank notes of the Bank of Mississippi."

The petition in this case contains, we think, all the necessary allega-

---

of 1825. Hancock v. McKinney, 7 T., 384; Jenkins v. Chambers, 9 T., 167; Murchison v. Hall, 10 T., 461; Ryan v. Jackson, 11 T., 391; Portis v. Hill, 14 T., 69; Marlin v. Stockbridge, 14 T., 165; Clay v. Holbert, 14 T., 189; Harris v. Hardeman, 15 T., 466; Fulton v. Duncan, 18 T., 34; Martin v. Parker, 26 T., 253; Manchaca v. Field, 62 T., 135. Under decree of January 4, 1823 (Gammel's Laws of Texas, vol. 1, p. 27), colonist could alienate at any time after receiving his grant. Portis v. Hill, 14 T., 69; Thomas v. Moore, 46 T., 433; Summers v. Davis, 49 T., 541. Title obtained under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), were not affected by inhibition in colonization laws, prohibiting sale for six years. Babb v. Carroll, 21 T., 765, 769; Moore v. Bullard, 24 T., 149; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678.

tions to sustain an action on a note of the description sued on. It would be different if the contract had been for the delivery of specific articles on *demand;* for then a demand, and refusal or failure, should be specially averred. But in cases where the contract specifies the *sum* to be discharged by the delivery of specific articles, or of a particular description of currency, and the time of payment, the place of delivery or payment either results from the nature of the contract itself, or is to be fixed by the creditor upon application of the debtor, before the time of delivery. In such cases it has been held that it is the duty of the payor to apply to the payee before the day of payment arrives, to ascertain where he will receive the articles specified; and it is the privilege of the latter to fix. the place of delivery, provided it be a reasonable one, which the debtor will be bound to observe; or failing so to do, he will lose the benefit of discharging his contract *specifically,* and must be held to pay it in money. Bixley v. Whitney, 5 Greenl., 192. In cases, then, where the place of payment is fixed by the contract, or results from the nature of such contract, and in cases where the first step is to be taken by the debtor to ascertain the *place,* it is unnecessary for the plaintiff in describing his cause of action in his petition to allege anything concerning the place of payment, or his readiness there to receive the specific articles; and it will be sufficient if the petition set forth nonpayment generally. If the defendant relies on *specific* payment in his defense, he must set it forth with all the necessary incidents in his answer.

The plea is very defective. If the defendant intended to allege that on the day the note became due he tendered to the plaintiff the amount due in money, that is to say, gold and silver coin, he should have alleged his present readiness to pay in the same medium; otherwise the plea would be no defense. This he has not done, for upon a fair construction of this portion of the answer, the defendant alleges a tender in one description of currency, and his present readiness to pay in another, viz., bank notes of the Bank of Mississippi; and it does not appear by averment or otherwise that these "bank notes" are the currency referred to in the note. But in the absence of any statement of facts (and the transcript contains none in this case) it would be presumed, if the answer presented distinct and legitimate issues of fact, that these issues were properly tried in the court below, and determined in a manner compatible with its judgment.

In addition to the foregoing matters, the defendant has endeavored to establish an equitable defense, which he insists should preclude the plaintiff's recovery. This portion of the answer alleges that the note

---

[2] Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Tinnen v. Mathews, Dal., 491; Huff v. Folger, Dal., 530; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 301; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T., 54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Ass'n v. Harris, 94 T., 25; Apollos v. Staniforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. ,C. A., 381; M. K. & T. Ry. v. Thompson, 11 T.

sued on, together with several others, was given in purchase of two town lots in the town of Hernando, on the 11th of November, 1839, to one John L. Brown; that said Brown had purchased not only *these,* but *other* lots in said town, of the plaintiff and one Samuel McCorkle, and had received their bond to make a title when *all* the lots so purchased should be paid for; that the said McCorkle has informed him that the title to *his two lots* will not be made until Brown shall pay for *all* the lots he purchased; that Brown fraudulently concealed from the respondent the situation of the title to the lots purchased of plaintiff and McCorkle as aforesaid, and did not disclose the incumbrances affecting them; that consequently the respondent purchased in ignorance of these circumstances, and that he believes and charges that the said Brown is insolvent; that said Brown transferred the note sued on to the plaintiff; that it is the joint property of plaintiff and McCorkle who received it, knowing the circumstances under which it was given; also that he, the respondent, *took possession* of the *two* lots for which the note was given, believing that Brown would make him a good title, etc.

We do not deem it necessary to allude to the incumbrances complained of by Hardin. The latter part of his answer renders it entirely unnecessary to do so. To avail himself of the relief which he sought from the equitable power of this court, he should have shown that he had been evicted from those two lots, of which he took possession at the time of the purchase. 8 N. S., 330; 2 N. S., 619; 3 N. S., 611; 4 Mart., 23.

The defendant can not be permitted to withhold the price, unless he be evicted by one having paramount title. It would be alike unjust and contrary to the authorities cited to permit him to retain the property in possession without any actual or probable danger of being disseised or disturbed in the enjoyment of it, and at the same time refuse to pay the price. The judgment of the court below must be affirmed.

*Affirmed.*

## No. XXXII.

### JESSE CARR, BY DAVID A. MONAGHAN, GUARDIAN, v WILLIAM WELLBORN.

(See Note 79.)

*Appeal from Red River County.*

MORRIS, JUSTICE.—The plaintiff Monaghan, guardian of Carr, filed his bill in the district court on the 17th of February, 1843, and alleges the pendency of a suit in the chancery court for the sixth district of the

C. A., 658; M. P. Ry. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry., 65 T., 13; Seiders v. Life Ass'n., 93 T., 194; Life Ass'n. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in different States, intention of parties governs. Ryan v. M. K. & T. Ry., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State, contrary to its laws or public

northern chancery division of the State of Alabama, held in Huntsville on the third Monday after the fourth Monday in November, 1840, commenced by original bill some time in the year 1837, wherein the same parties as are now in this court were plaintiff and defendant. In which said bill it is substantially averred that Jesse Carr is and always has been a man of extremely weak and unsound mind, so as to be and always to have been incapable of managing his own affairs and especially incapable of making valid contracts. The bill sets forth the inquisition of lunacy taken before the proper tribunal in the State of Alabama and the action of that court adjudging said Carr to be non compos, or an idiot; the appointment of said Monaghan as the guardian both of his person and property; also, that about ten years before filing of said bill, Carr was possessed in his own right of certain negro slaves (naming them); that the said Wellborn, operating on the feeble mind of Carr, taking advantage of his extreme mental imbecility, by fraudulent means and contrivances induced him to convey the said slaves to said Wellborn under a fraudulent sale; that the said Wellborn has remained ever since in possession of said slaves, whose number has increased by births from the females. The petition prays that the sale be set aside as null and void and the negroes in controversy be decreed to Monaghan, as guardian of Carr. Upon this petition, after full answer by defendant and a tedious litigation of two years, a decree was rendered by the chancellor of said court in the State of Alabama, in November, 1840; wherein "it was ordered and adjudged that Jesse Carr recover of said Wellborn the sum of $967.90, with the slaves mentioned in his bill; and that all title of and to said slaves be divested out of Wellborn and vested in complainant Carr; the said slaves to be delivered to and held by his guardian, the said David A. Monaghan, for the use and benefit of said Carr." The whole record in this case is made a part of the plaintiff's petition in the court below; which goes on and alleges, that soon after the determination of said cause, or during its pendency, the defendant, Wellborn, secretly and fraudulently conveyed away the said slaves from the State of Alabama to the county of Red River, in this Republic, where he resides; and continues to hold them and their increase without title and in bad faith, and refuses to deliver them to the plaintiff in this action. To this petition the defendant filed a demurrer and also, under the rule of court, an answer to the merits. The demurrer was sustained by the court below and the plaintiff's bill dismissed with costs; from which judgment an appeal has been taken to this court.

---

policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermott, Dal., 419; M. K. & T. Ry. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

The points raised by the demurrer are:

1. That a guardian, appointed in a foreign country, can not maintain a suit for his ward in our tribunals.

2. That by our laws, no suit founded on a judgment or decree of a foreign tribunal can be maintained in our courts, with certain exceptions; and that the judgment or decree which is the foundation of the plaintiff's action does not fall within those exceptions.

Upon the first point we must confess that much difficulty and embarrassment, under the peculiar circumstances of this case, have arisen in our minds. In examining the opinions of jurists on this subject, we find names eminent in the science of the law enrolled on opposite sides, and in support of their respective opinions, arguments so plausible in themselves and so well based on the foundations of reason and law and logic, that the mind rests suspended in doubt as to a correct conclusion. The civilians almost without exception agree in the conclusion that the authority of the guardian over the person and personal, or movable property of his ward extends to foreign countries, and that he is entitled to assert his claims over the movable property of the ward and sue for his debts in a foreign country, without having any confirmation of his guardianship by the local authorities; whilst some have gone to the extent of permitting and recognizing the same right over the immovable property. In the English courts, at least one case can be found where the first proposition has been sustained; although the current of modern cases in their courts seems to have fallen into what now is the fixed channel of the large mass of American decisions, "that the rights and powers of guardians are strictly local, and not entitling them to exercise any authority over the person 'or personal property of their wards in other States, upon the same reason and policy that has circumscribed the rights and authorities of foreign executors and administrators, who are not permitted to sue or be sued in their official capacity in any country, foreign to that from whence they derive authority; but to maintain any suit, new letters of administration must be obtained in accordance with the laws of that country in whose tribunals they may wish to institute an action." The authorities on this subject are now so numerous that they scarcely need a reference to them; although upon examination it will be found that the general rule has had its exceptions and distinctions which have been supported by reasons the most cogent and forcible. In 8 Louisiana, in the case of Chiapella v. Comprey et al., it has been decided, "that a tutor, or guardian regularly appointed in another State, or foreign county, has authority to sue for,

---

**Note 61.**—Simms v. Price, p. 554.

Purpose of charge is to give jury the means of applying the law to the facts. Reynolds v. Williams, 1 T., 311; Henry v. Sansom, 2 T. C. A., 150. Charge should state matters of law, not questions of fact. Reynolds v. Williams, 1 T., 311; Gay v. McGuffin, 9 T., 501; Jones v. State, 13 T., 168; Insurance Co. v. Brown, 82 T., 631; Searcy v. State, 1 T. App., 440; Rice v. State, 3 T. App., 451. Should distinctly separate questions of law from questions of fact. Rogers v. Broadnax, 24 T., 538; Brucham v. Gann, 1 U. C., 345; Hammond v. Coursey, 2 U. C., 29. Questions of fact only should be submitted

recover, receive or take possession of property situated in that State, belonging to the inheritance of his ward, without confirmation by any of the tribunals of that State." The court in that instance say, "that though their decisions, with regard to foreign testamentary executors having no right to sue except after confirmation by their courts, might well be questioned, still, being settled by previous adjudication, they will not now inquire into it." And in conclusion the reason is given in general terms, "as arising from the distinction between the rights and duties of tutors and guardians and executors. The office of the latter is of short duration and confined solely to the property of the estate; whilst the former have the guardianship and protection of minors committed to their charge, and are bound to provide for their maintenance for a length of time. They would be unable to perform their duties if the possession of the estate which they have a right to administer be withheld from them."

In the case of Holmes et al. v. Rensen et al., Executors of Clason, cited in 4 Johns. Chan. Rep., 460, it was held, "that the assignees of a foreign bankrupt might sue in that State (New York) for debts due to the bankrupt's estate, either as such assignees or in the name of the bankrupt." Although this case may not be precisely in point, still in many of its bearings and much of the reasoning of the learned judge it will be found parallel in principle with the case at bar. The general grounds of international law, public polity, and general comity between nations, which form the basis of the conclusions at which he arrives, are alike applicable to this case, and prove at least that the broad rule laid down with regard to persons deriving their authority by local law being confined strictly within the limits of the jurisdiction from whence they derive their authority, not only admits of exception, but also of extension, when reason and justice require it. Organized as our system is on the principles of the common law, both reason and prudence should lead to adopt decisions of courts whose system is the same; especially when supported by the authority of reason and the dignity of names, eminent for their proficiency in science and wisdom and their elucidation of the principles of the common law. Much less would we attempt, in the infancy of our jurisprudence, to decide between the conflicting opinions of civil and common law jurists on so difficult a question. "Non nostrum tantas componere lites." Enough that we should follow in the beaten track, guided by the lights which they have shed, to conclusions correct in principle, guarded by precedent, and just in their effects. Admitting, then, that the decision of judges of the common law courts on this subject be correct, and that we adopt them as our

to jury. Railway v. Murphy, 46 T., 356. Jury must look alone to charge of court for the law, and to evidence for facts. Green v. Hill, 4 T., 465; Railroad v. Nixon, 52 T., 19; Goode v. State, 16 T. App., 411. If jury finds contrary to instructions, verdict should be set aside. Reynolds v. Williams, 1 T., 311; Railway v. Mackney, 83 T., 410; Marsalis v. Patton, 83 T., 521; Goggan v. Evans, 12 T. C. A., 253; Wilkinson v. Wallis, 1 App. C., sec. 688. Error for court to direct jury for which party to find. Reynolds v. Williams, 1 T., 311; San Antonio v. Lane, 32 T., 405; Williams v. Davidson, 43 T., 1.

own, we have seen that even with them there are exceptions and distinctions, by *implication.* Are there none in express terms?

In section 516, page 432, Story's Conflict of Laws, we are called on to note a distinction which is rather in the nature of an exception to the general rule which has been before stated. He says: "If a foreign administrator has in virtue of his administration reduced the personal property of the deceased there situated into possession, so that he has acquired the legal title thereto according to the laws of that country, if that property should be afterwards found in another country or be carried away and converted there against his will, he may maintain a suit there, *in his own name and right,* personally, without taking out new letters of administration; for he is to all intents and purposes the legal owner thereof, although he is so in the character of trustee for other persons; and so with regard to specific legacies," etc. I might stop at this point, as being conclusive on the question before us for consideration, but for the fact that the words of the learned author might lead to the conclusion that a reduction of the property into "absolute and positive possession" was necessary before the right of the administrator would be recognized. Let us see if such be his meaning, or such the conclusion to which *reason and law* should lead us!

The judgment or decree on which the present action is founded wa', in the alternative, for the specific property claimed in the bill; or, if that could not be reached, for its *value.* It was in its terms and from its very nature a judgment in rem; and such judgments upon principles of comity, international law, and reason are final and conclusive everywhere. Story's Con. of Laws, p. 495, secs. 591, 592. Even were this a judgment in personam, which has been held in some courts both of the United States and England to be only prima facie evidence of that which it purports to adjudge or decide, still, under the form and in the manner in which this case is presented to our consideration, it could not be attacked. The extreme limit to which any of the courts above mentioned have gone in examining the judgments of foreign tribunals in *fact,* although from the general expressions used in their decisions *an implication to a greater extent could be drawn,* is, "that it must be shown that such foreign tribunal has jurisdiction over the subject matter and the person; that due notice had been given to the parties; or that it was procured by fraud, founded in mistake, or irregular and bad by the local law, rei judicatae." Story's Con. of Laws, p. 507.

The judgment or decree which is the basis of this action, together

---

**Note 62.**—Darly v. Chevalier, p. 555.

[1] Errors not objected to in trial court can not be raised on appeal. Edwards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy, Dal., 376; Wescott v. Menard, Dal., 503; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; An-

with the record of the cause in the court wherein it was decided, having been made a part of the petition, the demurrer of the defendant, by admitting its correctness, would prevent the possibility of those questions arising now; and so far as the present position of the case is concerned, the judgment would be and is deemed conclusive as to the rights of the parties, whether it be in rem or in personam, unless some of the causes above enumerated were shown to exist upon the face of the decree, which has not been attempted to be done. That judgment divests the property in the negroes out of Wellborn and vests it in Carr (the idiot), and vests likewise the legal title and possession in Monaghan, as trustee for Carr. Monaghan had before that time, by his appointment from the proper court as guardian for Carr, been clothed with all the rights of his ward, in possession or in action. This was a right in "action," which when established in a competent tribunal, became merged in the judgment and vested as an absolute right in him personally.

Thus when a judgment is obtained by an administrator against a debtor, in the court to whose jurisdiction he is accredited, it will give the right to such administrator to maintain a personal suit against the debtor in any other State; because the judgment would *as to him* merge the original debt and make *it personally due to him, in his own right;* he being responsible therefor to the estate. Story's Con. of Laws, 522, p. 437. If this be correct law as to debts, it is equally applicable to "specific recovery of specific property;" and the right of an administrator to such recovery, when established by a competent tribunal, would merge the former inchoate right and give it personally to *him;* in which event he might maintain a suit in his own name in a foreign tribunal. With the strict rules, as applicable to *administrators,* we find that the *right would exist;* a fortiori then should it more readily be extended to guardians, whose rights and privileges, as well as those of their wards, are the special objects of the care and protection of the courts of all countries. The guardian in the case before us has prosecuted his inchoate right in a competent tribunal, having jurisdiction over the person and subject matter in controversy; he has obtained his decree, which merges the former right and vests it *personally in him;* and he therefore falls clearly within the distinction and is entitled to maintain his action.

The second ground of demurrer is urged under the second section of an act of our Congress, entitled "An act creating a system of bankruptcy and regulating the collection of foreign debts." Texas Laws, vol 5, p. 44. The section reads in the following words:

"That no suit, proceeding, judgment or decree shall be brought, pros-

drews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v. Ray, 50 T., 511; Urquhart v. Womack, 53 T., 616; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244;

ecuted or sustained in any court or judicial magistracy of this Republic, on any judgment or decree of any court or tribunal of any foreign nation, State or territory; this Republic not being bound by any international law or comity to give credence or validity to the adjudication of foreign tribunals whose measures of justice and rules of decision are variant and unknown here; but this provision is *in 'no degree'* to affect the validity or obligation of contracts, engagements or pecuniary liabilities originating abroad, or the original evidence, testimony or proof to establish the same; neither shall this provision extend to, or embrace any foreign judgment or decree, for specific property or *recovery,* introduced as the basis of a public sale for the transmission of title, or the record or memorial of any *link* or *muniment* of title to specific estate, all of which shall depend upon the present law and usages of the Republic; and this provision shall not in any manner relate to or affect the determination of courts of admiralty and maritime jurisdiction abroad, proceeding in rem and according to the laws of nations."

The judgment or decree on which this action is founded is, under the demurrer, to be deemed conclusive between the parties, as we have before stated. That judgment divests the property out of appellee in this court, who was the defendant below, and vests it in the appellant. It is for "specific estate" and forms of itself the *muniment* of the appellant's title, coming, both in terms and spirit, within the letter and intent of the statute. It is the "record or memorial of a muniment of title" of the same nature but higher dignity than a *deed.* That portion of the judgment which relates to moneyed transactions between the parties and decrees a recovery to the plaintiff of a certain amount of money, must fail under the statute; but as to the *specific estate and recovery,* it is well brought and must be sustained.

Both grounds of demurrer, then, being untenable, we think that the court below erred in sustaining it. It is therefore ordered and adjudged that the judgment of the court below be reversed, the demurrer overruled, and the cause remanded to proceed upon the bill and answer.

*Reversed and remanded.*

---

Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A.. 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

[2] In order to maintain action against executor or administrator, claim must be duly authenticated, presented and rejected. Graham v. Vining, 1 T., 639; Tompkins v. Bennett, 3 T., 36, 49; Harrison v. Knight, 7 T., 47; Hall v. McCormick, 7 T., 269; Millican v. Millican, 15 T., 460; Thompson v. Branch, 35 T., 21; Bank v. Higgins, 72 T., 66; Jenkins v. Cain, 72 T., 88; Kiolbassa v. Raley, 1 T. C. A., 165; Perkins v. Traynham, 3 App. C., sec. 78; Ballard v. Murphy, 4 App. C., sec. 171; Lainer v. Taylor (T. C. A.), U. R. C., 1897. Presentation and rejection after suit is filed, is not sufficient. Thompson v. Branch, 35 T., 21. And authentication, presentation, rejection and date of same should be specifically alleged and proved. Cummings v. Jones, Dal., 531; Graham v. Vining, 1 T., 639; Graham v. Vining, 1 T., 669; Hall v. McCormick, 7 T., 269, 278; Deen v. Duffield, 8 T., 235; Fulton v. Black, 21 T., 424; Wiley v. Pinson, 23 T., 486; Walters v. Prestidge, 30 T., 65; Swift v. Trotti, 52 T., 498; Tolbert v. McBride, 75 T., 95; Rogers v. Harrison, 1 App. C., sec. 495. Indorsement on claim rejecting it, is prima facie proof of rejection, in

## No. XXXIII.

### NASH AND MABBIT V. THE REPUBLIC.

(See Note 80.)

*Appeal from San Augustine County.*

HEMPHILL, CHIEF JUSTICE.—In this case the defendants, being guilty of an affray, were ordered by the court to pay fines respectively and to remain in custody until payment was made. After the entry of the judgment, motions were made by the defendants separately for the arrest thereof; and on considerations of the motions, judgment against Nash was arrested; but the court, regarding the grounds set forth in the motion made by the defendant Mabbit as novel and difficult, made no decision thereon, but reserved them for the discretion and consideration of the Supreme Court. Were it competent for this tribunal to entertain jurisdiction of the points of law involved in this case, we might discuss the propriety or legality of entertaining a motion in arrest of judgment after it has once been rendered by the court; but the questions reserved for our deliberation not having been decided below, we are without jurisdiction and can not properly consider any of the matters embraced in the record.

The Constitution having declared that the jurisdiction of the Supreme Court shall be appellate only, we are limited to the review of the adjudications of inferior courts; and until their decisions are made, no subject matter arises on which the revisory power of this court can be exerted. See the case of McLaughlin v. The Republic, 1841. It is therefore ordered that the case be dismissed for want of jurisdiction.

*Dismissed.*

## No. XXXIV.

### JAMES L. SMITH V. WILLIAM JAMISON.

*Appeal from Harrison County.*

JACK, JUSTICE.—Jamison sued Smith in the district court upon five several notes and obtained judgment. Smith appealed. One of the notes was made payable, "to Sewell and Long, or bearer." The petition contains an averment that this note, "for a valuable consideration, was transferred by delivery" to the plaintiff below.

The statement of facts sets out: "That one of the notes sued on was made payable to Sewell and Long, or bearer,—a firm in the town of

---

absence of plea of non est factum. Tolbert v. McBride, 75 T., 95. These rules are as applicable to claims secured by liens as to unsecured claims. Graham v. Vining, 1 T., 639; Graham v. Vining, 2 T., 433; Danzey v. Swinney, 7 T., 617; Conkrite v. Hart, 10 T., 140, 141; Crosby v. McWillie, 11 T., 94; Duty v. Graham, 12 T., 427, 437; Robertson v. Paul, 16 T., 472, 475; Cunningham v. Taylor, 20 T., 126; Converse v. Sorley, 39 T., 515; Buchanan v. Wagnon, 62

Shreveport, Louisiana,—as attorneys at law, and judgment was rendered for plaintiff, without proving the existence of the partnership."

Upon this statement of facts the case is submitted in this court without argument.

We know of no rule of evidence which requires the proof to be made, by the holder of a note indorsed or transferred to him, of the partnership of the original payees of such note. And even if such were the law, the defendant in this case below in one of his answers has expressly admitted the fact, by averring that the note was "made payable to James B. Long and William Sewell, partners."

We are of the opinion that the appeal was for delay, and that the judgment of the district court should be affirmed with 10 per cent damages.

*Affirmed.*

## No. XXXV.

### MITCHELL v. BARTON.

OCHILTREE, JUSTICE.—This case has been brought here by the appellee, who demands an affirmance of the judgment of the court below. The tenth rule for the government of the Supreme Court prescribes the manner in which transcripts shall be prepared for the inspection of this court.

The transcript in this case is so entirely slovenly, so wanting in every essential requisite under the rule to which we have referred, that we decline taking any further action thereon.

---

T., 375; Wilson v. Harris, 91 T., 427. It is not necessary to verify and present claim to independent executor before bringing suit. Pleasants v. Davidson, 34 T., 459; Black v. Rockmore, 50 T., 88, 99; Smyth v. Caswell, 65 T., 379; Ellis v. Mabry, 25 T. C. A., 164. If executor allows claim and rejects lien, suit can not be maintained to foreclose lien. Mortgage Co. v. Jackman, 77 T., 622; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368. In such cases the lien must be enforced through probate court and not by an independent action in another court, except where claimant has some legal or equitable right connected with claim, which can not be adjudicated in probate court. Cunningham v. Taylor, 20 T., 126; Cannon v. McDaniel, 46 T., 303; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368; Perkins v. Traynham, 3 App. C., sec. 78. When both claim and lien on land are rejected, only remedy is in district court. Leslie v. Elliott, 26 T. C. A., 578. Presentation to and rejection by one of several executors is sufficient to authorize suit. Deen v. Duffield, 8 T., 235. Failure to present claim within one year from appointment of administrator does not defeat action to foreclose lien. Phillips v. Mortgage Co., 90 T., 195. When a lien claim is rejected, claimant may have judgment in district court for establishment of lien as well as debt. Cunningham v. Taylor, 20 T., 126; Perkins v. Sterne, 23 T., 561; George v. Ryon, 94 T., 317 (reversing George v. Ryon, T. C. A., U. R. C., 1900); Jenkins v. Cain (T. Sup.), U. R. C., 1889. Presenting claim without presenting lien is sufficient presentation, though the better practice is to present both. Danzey v. Swinney, 7 T., 617; Cundiff v. Simpson, 32 T., 144; Cannon v. McDaniel, 46 T., 303; Mortgage Co. v. Jackman, 77 T., 622. Presenting claim alone is not waiver of lien. Ball v. Hill, 48 T., 634; Kempner v. Comer, 73 T., 196; Sutherland v. Elmendorf, 24 T. C. A., 137. In a contest between lien creditors, appellant can not on appeal object for first time that appellee's claim was not duly authenticated and presented, where administrator is not party to ap-

peal. Watt v. White, 46 T., 338. Holder of vendor's lien note is not required to present claim to administrator of deceased indorser before bringing suit against maker to foreclose lien. Watt v. White, 46 T., 338.

**Note 63.**—Ward v. Boon, p. 561.

Action of court in granting or refusing continuances will not be revised unless it is plain that injustice has been done. Hart v. King, Dal., 456; Hipp v. Bissell, 3 T., 18; Hipp v. Huchett, 4 T., 20; Ayers v. Duprey, 27 T., 593; Peck v. Moody, 33 T., 84; Addington v. Bryson, 1 App. C., sec. 1292; Texas Express Co. v. Scott, 2 App. C., sec. 72. Where the allowance or refusal of the continuance is within the discretion of the court a very clear case of abuse of discretion must be shown to authorize a reversal. Lewis v. Williams, 15 T., 47; Byne v. Jackson, 25 T., 95; Baldessore v. Stephanes, 27 T., 455; McMahan v. Busby, 29 T., 191; Wiggins v. Fleishel, 50 T., 57; Allyn v. Willis, 65 T., 65; M. P. Ry. Co. v. Christman, 65 T., 369; Guy v. Metcalf, 83 T., 37; T. & P. Ry. Co. v. Hall, 83 T., 675; Hannah v. Chadwick, 2 App. C., sec. 518.

